## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

PETERS v. CITY OF LYNCHBURG.

April 13, 1882.

<div style="float:right">76  927<br>108  591</div>

TAXING POWER—*State—Municipal—Restrictions—Succession tax—Case at bar.*—Testator bequeathed to J a legacy. City of L, under Code 1873, ch. 54, and under its charter, imposed thereon a succession tax. P, the executor, who was also J's trustee, brought his bill to enjoin its collection. Circuit court dissolved the injunction. On appeal to this court—

HELD:

1. The legislature hath absolute sovereign power of taxation, save so far as restricted by the Federal or the State constitution. But all taxation—State, county or town—must be equal, uniform and *ad valorem*, except as to incomes, licenses and capitation.

2. Succession tax is not a tax on property, in the sense of the constitution, art. 10, § 1. It is a premium demanded for the privilege of transmitting one's estate. To impose a tax on such privilege is a power inherent in the legislature, in the absence of constitutional inhibition.

3. Municipal corporations have no power of taxation, except the power be plainly and unmistakably conferred.

4. The power to impose a succession tax may be delegated by the legislature to counties and municipal corporations. *Contra,* by *Anderson,* J.

5. [By *Anderson* and *Staples,* J's.) That power *has not been* conferred upon the city of L, either by its charter or by Code 1873, ch. 54, § 33.

6. (By *Burks* and *Christian,* J'R.) That power *has been* conferred upon the city of L by Code 1873, ch. 54, § 33.

Appeal from decree of the circuit court of the city of Lynchburg in the chancery suit of Wm. E. Peters, executor of Don T. C. Peters, deceased, and trustee under his will for Julia Tribble, now the wife of Col. Frank Huger, to enjoin and prevent the said city from levying and collecting

a collateral inheritance tax of five per centum upon a leg-acy of $10,000, bequeathed by the testator to Mrs. Huger. The circuit court decided that the city had the power to impose the tax, and dissolved the injunction with costs. The complainant obtained an appeal to this court.

*R. G. H. Kean,* for the appellant.

*Stephen Adams* and *Kirkpatrick & Blackford,* for the appel-lee.

ANDERSON, J.  The question raised by the record in this case is, Has the city of Lynchburg power to assess and col-lect a collateral inheritance tax ?

The power was claimed by the State under the con-stitution of 1851.  By § 22, art. 4, of that instrument, it was declared that "Taxation shall be equal and uniform throughout the Commonwealth, and all property other than slaves shall be taxed in proportion to its value, which shall be ascertained in such manner as may be prescribed by law."  It was regarded as a very doubtful question whether the legislature had the power to impose such a tax under that constitution.  The tax imposed by the legislature was two *per centum* upon the amount or value of the estate, which by the will of the decedent, or the law of descents and distributions, passed to any person other than his lineal descendants, or his father, mother, husband, wife, brother or sister.  The power was vigorously contested before this court in *Eyre* v. *Jacob, Sheriff,* 14 Gratt. 422, and was sustained by a bare majority of the court—Daniel and Moncure dis-senting.

It was argued that the mandate of the constitution was that taxation "shall be equal and uniform," and that the tax in question was most unequal ; and that the aforesaid provision of the constitution applied to every species of tax.

The opinion of Judge Lee, in which a majority of the
court concurred, declares in the forefront of his argument,
that the legislature possesses the full, absolute, sovereign
power of taxation, except so far as it may be restricted by
the constitution of the United States or of the State, which
he regards as a universally recognized principle. He rea-
sons to show that the 22d section has reference only to a
tax on property, and that the equality and uniformity re-
quired was in reference to the eastern and western divisions
of the State, as a conflict of interest existed at that time,
and distrust and jealousies, on account of the greater
prevalence of slavery in the eastern than in the western
division, which was the occasion of inserting the clause,
shall be equal, &c., "*throughout the Commonwealth,*" which
words are dropped in the present constitution. He held
that the imposition in question was not a tax on property,
but on a civil right, and was not included in the term
" taxation," as used in that section. He characterizes it as
" a premium paid for the right enjoyed," p. 430. And again,
on the same page, he says: "The right to take property by
devise or descent is the creature of the law, and secured
and protected by its authority. The legislature might, if
it saw proper, restrict the succession to a decedent's estate,
either by devise or descent, to a particular class of his
kindred, say to his lineal descendants and ascendants; it
might impose *terms* and *conditions* upon which collateral re-
lations may be permitted to take it; or it may to-morrow,
if it pleases, absolutely repeal the statute of wills, and that
of descents and distributions," &c. " Possessing this sweep-
ing power over the whole subject, it is difficult to see upon
what ground its right to appropriate a *modicum* of the
estate—*call it a tax, or what you will*—as the *condition* upon
which those who take the estate shall be permitted to
enjoy it, can be successfully questioned." This reasoning
of the judge tended to show that the imposition in ques-

tion—"call it a tax, or what you will"—was not a tax in the meaning of the term taxation, as used in § 22, but that it is more properly a premium required by the State of the person to whom the estate passed, or a condition upon which he received it, and was protected in its enjoyment.

This question was again raised in *Miller's Ex'or* v. *The Commonwealth,* 27 Gratt. 110. This case also arose under the constitution of 1851, and was governed by the act of assembly of 1869. Judge Christian, who delivered the opinion, in which a majority of the court concurred, said: "The case of *Eyre* v. *Jacob,* 14 Gratt., is decisive of the question, and must govern this case." A majority of the court, consisting of four judges, were for affirming the judgment of the court below, which maintained the tax. Judge Staples dissented. There has been no decision by this court of the question as it arises, as it does in this case, under the present constitution.

There is a difference in the ordinances of the two constitutions on the subject of taxation. I will not say that they are in conflict, but the present constitution is more explicit and is not, I think, liable to the doubtful construction on some points which were given to the former constitution. Article 10, section 1, declares that taxation, except as hereinafter provided, whether imposed by the State, county or corporate bodies, shall be equal and uniform, and all property, both real and personal, shall be taxed in proportion to its value, to be ascertained as prescribed by law. No one species of property, from which a tax may be collected, shall be taxed higher than any other species of property of equal value."

Whatever may be a proper construction of section 22, chapter 4, in the constitution of 1851, I think it is clear that the fair construction of section 1, of article 10, of the present constitution is, that taxation on all subjects, whether property or other subjects, except as thereinafter

provided, shall be equal and uniform, and property, which is subject to the foregoing requirement of equality and uniformity, with all other subjects which are not excepted, is also to be taxed according to the *ad valorem* principle. The clause requiring taxation to be equal and uniform *"throughout the Commonwealth,"* not being retained in the present constitution, and the surrounding circumstances before alluded to, which had no existence when the present constitution was framed, which, taken in connection, had a prevailing influence in construing the former constitution, can have no influence in construing the present. And the clause "except as hereinafter provided," inserted in the present constitution, and which was not in the former, it seems to me fixes the meaning of the present to be that all taxation which is not thereinafter otherwise provided shall be equal and uniform. The only exceptions which are thereinafter provided are contained in sections 4 and 5— the former, in relation to incomes and licenses, and the latter, to a capitation tax. The licenses are enumerated, and then it is added, "all other business which cannot be reached by the *ad valorem* system." The succession tax or imposition is not included in these exceptions by express terms or implication. If that is in any proper sense a tax, within the meaning of the term taxation, in section 1, not being included in the exceptions provided, and being an imposition which is most flagrantly unequal, it falls necessarily under the restriction that makes equality essential to the legality of the tax.

This presents the only difficulty. Is it a tax within the meaning of the term taxation as used in section 1? Does not that term, as used in that connection, have reference only to the regular annual taxes which are levied for the support of the government? The imposition in question is rather a premium required, or a condition imposed, on the person to whom the estate is transmitted by the sove-

reign power of the State for the right to enjoy it, and to be protected in it by the government, as it seemed to have been regarded in the case of *Eyre* v. *Jacob, Sheriff, supra;* if so, the State is not restricted in the exercise of the power by the constitution. Neither is the power given. But it is a power which is inherent in the sovereignty of the State. The constitution may limit or inhibit the exercise of the power by the State, but does not confer the power. I deem it unnecessary to press this view further.

But it is very clear, in the light of what has been said, that the constitution has not vested this power in counties or corporate bodies, and they have no such inherent power as adheres in the sovereignty of a State. They have no power of taxation, except the power be plainly and unmistakably conferred. "It is a principle universally declared and admitted," says Judge Dillon, "that municipal corporations can levy no taxes, general or special, upon the inhabitants or their property, unless the power be plainly and unmistakably conferred. It has, indeed, often been said that it must be specifically granted in *terms;* but all courts agree that the authority must be given either in express words, or by necessary implication, and that it can not be collected by doubtful inferences from other powers, or powers relating to other subjects nor deduced from any consideration of convenience or advantage." 2 Dillon Mun. Corp. § 605.

The foregoing principle has been repeatedly affirmed by this court. *Richmond* v. *Daniel*, 14 Gratt. 387 ; *O. & A. R. R. Co.* v. *Alexandria*, 17 Gratt. 184 ; and the case of *The Town of Danville* v. *Pace et als.*, decided at the present term.

The charter of the city of Lynchburg, to which we would naturally look for the power, if it exists, I am clearly of opinion gives no such power, either in express terms or by fair implication. And, indeed, from the nature of the power itself, and the grounds upon which it inheres in the

sovereign power of the State, and is not vested in the State or the municipal corporations by the constitution, it seems to me it is not such a power as could be dedicated to the corporation by the State.

But the appellee claims the right to exercise the power by § 33 of ch. 54 of the Code of 1873. It is a provision in the chapter on "towns," and is in these words: "It (the council or board of trustees) shall annually cause to be made up and entered on its journal all sums lawfully chargeable on the town, which ought to be paid within one year, and order a town levy of so much as, in its opinion, is necessary to be raised in that way, in addition to what may be received for licenses, and from other sources." I think this whole power touching the fiscal affairs of the city is vested in the council by the charter, to be exercised in a way that it may determine or by its by-laws and through commissioners of the revenue, under the limitation that the debt of the city shall not exceed 18 per cent. of the assessed value of the real and personal property held in the city. I think the provisions made by the charter cover the whole ground, and are a complete substitute for this provision in the general statute, and consequently supersede it. And the following provision in the section being consequential to and dependent on the foregoing, and that being superseded and being no longer in force, it would seem to follow that this also is superseded, and is not continued in force. I do not care to press this view. It is not necessary to reach my conclusion. The succeeding clause of the aforesaid section is as follows: "The levy so ordered may be upon the male persons in the said town above the age of sixteen years." It is limited by the charter to residents of the city over twenty-one years of age. So that this provision is in conflict with the charter, and is repealed by it; and is a circumstance to show that in framing the charter no reference was had to this section.

The section proceeds, and upon any property in the said town, and on such other subjects as may at the time be assessed with State taxes against persons residing in the town." I think this has reference to the annual taxes imposed by the State for the support of the government, but which is rather a premium or condition which a State may, in the exercise of its sovereign power, impose on the transmission of an estate by will, or by the laws of descents and distributions to collateral kindred, in the enjoyment of which they are secured and protected by the State. It is a power which, from its nature and source, could not be exercised by a municipal corporation; is not inherent in the municipality, as in the sovereignty of the State, and not being given to them in the constitution, which undertakes to regulate and restrain their powers of taxation as well as the State's, cannot be claimed by the counties and corporate bodies under that instrument, and is not an inherent power in them as it is in the State.

I do not think that the legislature intended, if it had the right, to transfer this extraordinary, eccentric and dangerous power by the two lines in this section to towns, without providing any restriction on its exercise, or for regulating the manner in which it should be exercised. I think this is peculiarly a case in which the argument *ab inconvenienti* may be relied on to show what was the intention of the legislature in enacting this section in the general statute as to towns. If the power is conferred by these two lines, it is not only conferred on councils of large cities, but upon the board of trustees of a town of a few hundred inhabitants. And if they had the power to take one-twentieth part of a man's inheritance from him, they had the power to take half of it. It is unreasonable, it is utterly inconceivable, that the legislature intended to confer such an exorbitant power upon every town of three hundred inhabitants in the State that had an act of incor-

poration and board of trustees. If the term taxes, in the foregoing clause, comprehends the imposition in question, it is included in the general term "taxation," in the 1st section, article 10, of the present constitution; and being plainly violative of the principle of equality required by that section, it is prohibited to be exercised by counties and corporate bodies by the constitution.

But I forbear to pursue the investigation further. I am decidedly of opinion that the power in question is not conferred upon the city of Lynchburg, and to reverse the decree of the court below.

STAPLES, J., said in order to prevent all misapprehension, in his opinion, the legislature, under the present constitution, has complete power to tax collateral inheritances, and that power may be delegated to municipal corporations. He was, however, of the opinion that in this case the power has not been conferred upon the city of Lynchburg, either under the charter of the city or by the 33d section of chapter 54, Code of 1873. He therefore concurred with Judge Anderson in reversing the decree of the circuit court.

BURKS, J., thought the power of the city to impose this tax was conferred by § 33 of chapter 54 of the Code of 1873.

CHRISTIAN, J., concurred with *Burks,* J.

DECREE AFFIRMED BY DIVIDED COURT.