## Richmond.

WITHERS AND OTHERS V. JONES' EXECUTRIX AND OTHERS.

### January 22, 1920.

1. SUCCESSION TAXES—*Acts 1916, p. 812—Constitutionality.*—Acts 1916, p. 812, amending section 44 of the tax bill, is not unconstitutional as violating the due process of law clauses of the State and Federal Constitutions. See *Commonwealth* v. *Carter, ante,* p. 469, 102 S. E. 58.

2. SUCCESSION TAXES—*Correction of Assessment—Jurisdiction of the Circuit Court of the city of Richmond.*—The Circuit Court of the city of Richmond has jurisdiction to entertain a bill for the correction of an inheritance tax assessed by the clerk of the Circuit Court of the city of Suffolk.

3. SUCCESSION TAXES—*Amount of Taxes—Expenses of Administration.*—Where an estate was devised and bequeathed to the testator's widow and three children, the beneficiaries were entitled to have the expenses of administration and debts, if any, deducted from the gross value of the estate, and then out of the net amount remaining they were each entitled to an exemption of $15,000, and the tax should then be computed on the residue of the property devised and bequeathed to them severally at the rates prescribed by the statute.

Appeal from a decree of the Circuit Court of City of Richmond. Decree for defendants. Complainants appeal.

*Reversed and remanded.*

This is a suit in equity having for its purpose the restraining of the collection of an inheritance tax of $17,-504.79, assessed by the clerk of the Circuit Court of the city of Suffolk, against the real and personal estate of a testator, Wm. H. Jones, Jr., deceased, which passed by the will of such testator, of which $16,934.79 was assessed

as such tax on the personal estate and $570.00 was assessed as such tax on the real estate which the executrix was not authorized by the will to sell and from which she was not authorized by the will to receive the rents and profits.

The assessment was made by the clerk under the inheritance tax statute of the State of 1916 (Acts 1916, p. 812).

By the will aforesaid the testator directed that all of his just debts should be paid, and then provided that he gave the residue of his estate in equal shares to his wife and children. The wife was nominated in the will as executrix thereof, and qualified as such. There were only three children. The latter were the plaintiffs in the suit in the court below and are the appellants here. The executrix, the Auditor of Public Accounts, the clerk of said circuit court and the treasurer of the city of Suffolk were defendants to the bill and are the appellees here.

The bill alleges the probate of the will and qualification of the executrix before the said clerk on August 9, 1916; the appointment of appraisers of the estate, as required by law, by the clerk on the same date; the return of the inventory and report of the appraisers on January 15, 1917, from which it appeared that the estate of the testator consisted of real and personal estate of the following aggregate valuation:

"Personalty of the appraised value of....$669,493.00
"Real estate of the appraised value of....  19,000.00

"Aggregating the sum of...............$688,493.00"

The bill then alleges that the assessment aforesaid was made by the said clerk on January 17, 1917, two days after the filing of said inventory and appraisement, and

sets forth the order entered by the clerk making the assessment aforesaid of the tax aforesaid. The tax on the personal estate was assessed to be paid by the executrix therefrom, and the tax on the real estate was assessed to be paid by the said widow and children, such taxes being as follows:

*On the Personal Estate.*

One per cent. on $35,000.00 in excess of $15,000.00 ...........................$    350.00

Two per cent. on $200,000.00 in excess of $50,000.00 ............................   4,000.00

Three per cent. on $419,493.00 in excess of $250,000.00 ...........................  12,584.79

*On the Real Estate.*

Three per cent. on $19,000.00................$    570.00

The bill contains the further allegations that the action of the clerk in making said assessment was "without notice either to your complainants or to said executrix."

The Auditor of Public Accounts, by counsel, demurred to the bill on two grounds, which are as follows: Because

"(1) That the complainants have a plain, adequate and complete remedy at law.

"(2) That a court of equity is without jurisdiction to hear and determine the cause."

The learned judge of the court below entered a decree sustaining the demurrer and dismissed the bill, on the ground, as stated in such decree, that the court was "without jurisdiction to entertain said bill." The said children have appealed from the decree and thus it is now before us for review.

*Daniel Grinnan* and *R: E. Scott,* for the appellants.

*Jno. R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General, F. Briggs Richardson* and *Oscar L. Shewmake,* for the appellees.

SIMS, J., after making the foregoing statement, delivered the following dissenting opinion:

The questions raised by the assignments of error and the positions taken by the Commonwealth thereon, will be considered and passed upon in their order as stated below, in so far as may be necessary for the decision in my view of the case.

1. Had the appellants a remedy to obtain relief from the assessment of the inheritance tax complained of, if erroneous, by motion under sections 567, 568, and 569 of the Code?

This question has not heretofore been presented for decision nor has it been passed upon by this court.

There was a construction of some of the provisions of the charter of the city of Lynchburg imposing a collateral inheritance tax in the case of *Peters* v. *Lynchburg,* 76 Va. 927; of some of the provisions of the collateral inheritance tax statute of 1896 (Acts 1895-6, p. 367-8) in the case of *Commonwealth* v. *Wellford,* 114 Va. 372, 76 S. E. 917, and of some of the provisions of the direct and collateral inheritance tax statute of 1916 (Acts 1916, p. 812) in the case of *Posey* v. *Commonwealth,* 123 Va. 551, 96 S. E. 771; but in none of these cases was the question we have now under consideration raised or considered.

The argument of the learned counsel on both sides of the cause has taken a wide range; the nature of an inheritance tax has been drawn into consideration; and the leading authorities in America on that subject have been cited

in argument. The following are some of the authorities so cited: Gleason and Otis on Inheritance Taxation, see pp. 2-38; Blakemore and Bancroft on Inheritance Taxes, see pp. 2-16; 22-31; Ross on Heritance Taxation, see pp. 2-37; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037; *Eyre* v. *Jacob,* 55 Va. (14 Gratt.) 422, 73 Am. Dec. 367; *Peters* v. *Lynchburg, supra,* 76 Va. 927; *Union Trust Co.* v. *Probate Judge,* 125 Mich. 487, 494, 84 N. W. 1101; *In re Dows,* 167 N. Y. 227, 60 N. E. 439, 52 L. R. A. 433, 88 Am. St. Rep. 508, 510; *Neilson* v. *Russell,* 76 N. J. Law 27, 69 Atl. 476; *S. C.,* 76 N. J. Law 655 (71 Atl. 286) 19 L. R. A. (N. S.) 887, 131 Am. St. Rep. 673; *U. S.* v. *Perkins,* 163 U. S. 625, 16 Sup. Ct. 1073, 41 L. Ed. 287; *Booth's Ex'r* v. *Commonwealth,* 130 Ky. 88, 113 S. W. 61, 33 L. R. A. (N. S.) 592.

As appears from the authorities, inheritance taxes had their origin in very ancient times, the earliest mention of them known to us being of such taxes in Egypt. They were first imposed under the Roman law by the Emperor Augustus. This method of taxation has been long in use in European countries and is now generally in force there. In the United States, Pennsylvania was the first to enact an inheritance tax statute, in 1826. Subsequently such statutes have been enacted in other States of the Union and by the Federal Government. They existed in 1917, as shown by the later works on this subject which are cited in argument, under United States statute and in all of the States except Alabama, Florida, South Carolina, Mississippi and New Mexico. Blakemore and Bancroft on Inheritance Taxes, p. 13; Gleason and Otis on Inheritance Taxation, p. 464; *Eyre* v. *Jacob,* 14 Gratt. (55 Va.) 422, 73 Am. Dec. 367; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037. As could but be expected, therefore, the authorities on the subject of the nature of this tax are almost innumerable as are

the sands of the sea-shore. But, notwithstanding their great number, they are, as stated by the text writers treating of them, almost unanimous in their holding of what is the true nature of such a tax. As summarized and stated in the learned work above cited of Gleason and Otis on Inheritance Taxation, p. 2, such holding is as follows:

"(a) That the tax is not a property tax; but an excise or impost tax upon the right to transmit property at death; or upon the right to succeed to it from the dead."

Whether the tax is a transmission or succession tax, or both, depends, of course, upon the form of the taxing statute. The Virginia statute of 1916 (Acts 1916, p. 812), involved in the cause before us, imposes the tax upon the right to succeed, and the tax is a succession tax. Gleason and Otis on Inheritance Taxation, pp. 11 and 12.

There has been some difference in the authorities as to the principle on which the holding above stated is based. That principle, as stated by many of the authorities, is as follows: "The right to take property by devise or descent is the creation of the law, and not a natural right—a privilege, and, therefore, the authority which confers it may impose conditions upon it." *Magoun* v. *Illinois Trust & Savings Bank, supra,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037. Some authorities, however, hold that there is a natural right in children to inherit by descent. *Idem.* See also, *U. S.* v. *Perkins, supra,* 163 U. S. 625, 16 Sup. Ct. 1073, 41 L. Ed. 287. But all the authorities on the subject agree that the legislature, if deemed by it conducive to the public good, may limit, impose any conditions it chooses upon, or take away altogether the right of *testamentary disposition* of property. *U. S.* v. *Perkins, supra.* And such authorities also agree (with the exception of those in Minnesota, where there is a peculiar constitutional provision) upon the proposition that acquisition of property by descent, as well as by testamentary disposition, is subject to

64

*regulation* by the legislature to the extent of imposing taxation thereon in excess of the rate imposed in the same taking jurisdiction upon other property, notwithstanding the existence of provisions in the State and Federal Constitutions requiring uniformity and equality in taxation. *Magoun* v. *Illinois Trust & Savings Bank, supra.* See also 7 Am. & Eng. Ency'l Law (1st ed.), pp. 346 *et seq.* and authorities cited.

But the conclusion that an inheritance tax is not a property tax, but only a tax imposed on, or as incidental to the regulation of, the right to transmit or to succeed to property from the dead, is reached by the authorities in their consideration of the principle on which the legislative right to impose the tax is based. See authorities first above cited. Such consideration and conclusion do not embrace the subject of the administration of an inheritance tax statute. As said in *U. S.* v. *Perkins, supra,* 163 U. S. 625, 16 Sup. Ct. 1073, 41 L. Ed. 287, of a legacy to the United States which was subject to an inheritance tax under the laws of New York; "* * * the tax is imposed upon the legacy before it reaches the hands of the government. The legacy becomes the property of the United States only after it has suffered a diminution of the amount of the tax, and it is only upon this condition that the legislature assents to a bequest of it." Hence, where the legislature does not by the statute go to the extent of making the State the heir to the whole of the estate of the decedent; merely prescribes a certain percentage of it which the State shall take, and assents to the passing of the residue of the property by devise or descent to the devisee or heir at law, it is manifest that such residue is the property of the devisee or heir under the law. *Ferry* v. *Campbell,* 110 Iowa 290, 81 N. W. 604, 5 L. R. A. 92. That is to say, the tax rate, which is fixed by the legislature is one thing; and the amount of the tax, which is ascertained by the administra-

tion of the tax statute, is another and different thing. And we see that if, in the administration of the inheritance tax statute, the devisee or heir is required to pay a tax in excess of the percentage imposed by the statute, or upon a valuation in excess of the true valuation of the estate intended to be taxed by the latter, or a tax otherwise in excess of its true amount, then, to the extent of such excess, the property of the devisee or heir is taken under the statute.

Such a taking is, in truth, not a taxation of property or taxation at all, although usually spoken of as such. It is a taking of property under the guise of taxation, which it may be the statute imposing the tax never intended to impose, but which it results, or may result, in imposing. And the same is true, indeed, of all erroneous assessments of property for taxation. Hence, if sections 567, 568, and 569 of the Code were so phrased as to give the relief thereby afforded in all cases of assessments of "property" for taxation, there would be no difficulty in holding, under the rule of liberal construction which is applicable to such statute law, that such remedy would embrace erroneous assessments of inheritance taxes and that the appellants had such remedy in the cause before us. But we see from reading section 573a of Pollard's Code 1904 that such has not been the legislative construction of sections 567, 568, and 569. Said section 573a was enacted subsequently to the three sections of the Code just mentioned, and gives the remedy by motion for relief from erroneous assessments of real or personal property in certain cases "not already provided for," but those are cases of assessments "by a commissioner of revenue," or "by the State Corporation Commission." And from a reading of sections 567, 568, and 569 of the Code, we see that they apply only to cases of assessment made or extended by commissioners of the revenue.

Under the collateral inheritance tax statute of 1884 (Acts Assem. 1843-44, p. 9, Code 1849, pp. 214-215) the commissioner of revenue assessed the inheritance tax (see Code 1849, sec. 10, pp. 179-180, sec. 42, p. 184, sections 58-9, p. 187, sec. 65, pp. 188-9). And a day in court to obtain relief from such an erroneous or illegal assessment was expressly provided by statute (see Code 1849, sections 97-100, p. 194). And the same is true of all the inheritance tax statutes of the State until such statute of 1910 which departed from the prior long followed method of having the commissioners of revenue assess such tax; and the statute of 1916 under consideration likewise made such departure in method of assessment.

The case of an assessment of taxes by a probate court or a clerk thereof, which is not required by the statute to be extended by a commissioner of the revenue, seems clearly to be a *casus omissus* of the statute law of the State giving a remedy by motion for relief from erroneous assessments for taxation, and hence, as I think, the appellants do not have such remedy.

2. Did the court below have jurisdiction of this cause on its equity side for the purpose of restraining the collection of the tax aforesaid?

The act of February 24, 1916 (Acts 1916, p. 89) which provides "that no suit for the purpose of restraining the collection * * * of any tax, State or local, shall be maintained in any court of this Commonwealth, except where a party has no adequate remedy at law," is relied on by the Commonwealth.

But, of course, in view of the conclusion above reached, it follows that the appellants had no remedy at law whatever, in the premises. Hence the statute has no application to the cause before us, and, the constitutional question next to be stated being involved, under the long established rule on the subject, the court below had jurisdiction of the cause

on its equity side for the purpose of restraining the collection of the tax.

Such being the case it is our duty to take jurisdiction of the cause and to enter such decree therein as the court below should have entered in the exercise of its jurisdiction. Coming to the discharge of that duty the following question is presented for our decision by the assignments of error, namely:

3. Is the inheritance tax statute aforesaid (Acts 1916, p. 812) unconstitutional and void because of its being in conflict with the provisions of the fourteenth amendment to the Constitution of the United States forbidding any person to be deprived of his property without due process of law (Article 1, section 11 of the Virginia Constitution being to the same effect), in that the statute does not provide for the giving to the persons (such as were the appellants), assessed with the inheritance tax, any notice of the proceeding or any opportunity to be heard before the assessment became binding and enforceable?

The consideration of this question is approached bearing fully in mind the principles by which this court is governed in considering the constitutionality of a statute. Those principles have been so frequently stated, however, that it is deemed unnecessary to set them forth here. See *Ex-parte Settle,* 114 Va. 715, 716, 77 S. E. 496; *Whitlock* v. *Hawkins,* 105 Va. 242, 248, 53 S. E. 401.

As above adverted to, the tax in the cause before us is not a tax which the legislature intended, in fixing the tax rate, to impose upon the property which passed to the devisees, but is a tax upon their right of succession thereto, yet by the manner in which the statute provides that the law shall be administered, such property may be *taken,* as aforesaid, to the extent that such tax is in excess of the true amount, as for example, where the valuation placed on the property subjected to the tax is above its true value.

Therefore, in the administration of the statute under consideration the rights of property of taxpayers are involved. And as said in the opinion of this court in *Violett* v. *Alexandria*, 92 Va., at p. 568, 23 S. E., at p. 911, 31 L. R. A. 382, 53 Am. St. Rep. 825. "In every case where the rights of property are involved, before the liability of the taxpayer is finally determined, he must have some kind of notice of the proceeding and an opportunity to be heard with reference to the value of his property."

The case last cited contains an extended review of the leading authorities on the subject under consideration which renders such a review here unnecessary.

See also to the same effect *Heth* v. *Radford*, 96 Va. 272, 274, 31 S. E. 8; *Norfolk* v. *Young*, 97 Va. 728, 729, 732, 34 S. E. 886, 47 L. R. A. 574.

Notice to the taxpayer prior to or at the time of the assessment of his property for taxation is not, nor is a judicial hearing essential, to afford him due process of law, provided such process of law be afforded him by means of subsequent proceedings required by statute before the tax obligation becomes enforceable, as, for example, by statute requiring a suit to enforce the obligation (*Hagar* v. *Reclamation Dist., etc.*, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569; and many other later cases which might be cited); or by statute allowing an appeal or other proceeding giving the taxpayer a right to be heard. Such a right of hearing, however, at some time before the tax obligation becomes enforceable, is absolutely essential in order to afford him due process of law.

Such is the requirement of due process of law and that requirement is not confined to cases which, strictly speaking, involve taxation of property. It extends certainly to all cases where one may be deprived of property by an assessment based upon value. As said in *Ferry* v. *Campbell*, 110 Iowa 290, at p. 297, 81 N. W. 604, at p. 607, 50

L. R. A. 92, quoting with approval from Cooley on Taxation: "It is not to be presumed that constitutional provisions carefully framed for the protection of property were intended or could be construed to sanction legislation under which officers might assess one for any amount in their discretion without giving an opportunity to contest the justice of the assessment. When the assessment is based upon value or benefit, whether it be a tax on property or *succession tax* and that value is to be ascertained by appraisement, assessors or other tribunal, which involves inquiry, notice and an opportunity for hearing are essential to the validity of the proceedings. *Hagar* v. *Reclamation Dist.*, 111 U. S. 701 (4 Sup. Ct. Rep. 663, 28 L. Ed. 569; *Stuart* v. *Palmer*, 74 N. Y. 183 [30 Am. Rep. 289] )." (Italics supplied).

Accordingly all of the text writers on inheritance taxation which have been cited before us are found to agree in the position that the prevailing view of the American decisions is that to comply with the due process of law constitutional requirement the statute imposing an inheritance tax must provide for some notice of the proceeding to the persons taxed and opportunity to them to be heard before the assessment becomes binding and enforceable by collection of the tax, except that it is held that if the statute provides for an appeal and a rehearing before the court, notice of the initial assessment is not necessary. Ross on Inheritance Taxation, section 254; Blakemore and Bancroft on Inheritance Taxes, pp. 66-7; Gleason and Otis on Inheritance Taxation, p. 383.

In fact there seems to be only one decision which is cited by the text writers as containing a contrary holding to that just stated, and that is the case of *Union Trust Co.* v. *Durfee*, 125 Mich. 487, 494, 84 N. W. 1101. And this is the only inheritance tax authority cited for the Commonwealth on this point. That case, however, in truth, holds merely

that the statute it had under construction, namely, Act No. 188, of the Michigan Pub. Acts 1899, was not in conflict with the due process of law constitutional requirement, in that it did not require notice to the taxpayer prior to the appraisement by the appraiser or assessment by the probate judge. For section 13 of the act provided that immediately upon the determination by the probate judge "as to the value of any estate which is taxable under this act and of the tax to which it is liable," he should give notice "to all parties known to be interested therein," and it was further provided in such section that, "Any person dissatisfied with the appraisement or assessment and determination of tax may appeal * * *" (as prescribed in the statute) "* * * from the fixing, assessing and determination of the tax by the judge of probate as herein provided * * *." Such notice and opportunity to be heard afforded due process of law upon the principle and under the other authorities above referred to.

This decision is, then, after all, in accord with the other American authorities on the subject under consideration, and makes the holding of these authorities stated by the text writers aforesaid as containing the *prevailing view*; in truth the *unanimous holding* of such authorities.

Said section 13 of the Michigan statute of 1899 aforesaid was taken substantially from the New York statute of 1892 (Blakemore and Bancroft on Inheritance Taxes, p. 609), and was construed in the case of *In re McPherson*, 104 N. Y. at pp. 321-2, 10 N. E. 685, 58 Am. Rep. 502, to require the notice therein provided for to be given, not only to the persons known to the probate officer to be interested, but to all persons interested. . Hence the statute was in the latter case held to be constitutional.

On the subject of the necessity of notice and hearing or an opportunity to be heard aforesaid, the following is said in the *McPherson Case* just cited:

"This tax is imposed according to the value of the legacy and collateral inheritance liable to be taxed, and hence there must be some mode of ascertaining that value; and for that purpose judicial action is requisite at some stage of the proceeding before the liability of the taxpayer becomes finally fixed. He must have some kind of notice of the proceeding against him, and a hearing or an opportunity to be heard in reference to the value of his property and the amount of the tax which is thus imposed. Unless he has these, his constitutional right to due process of law 'has been invaded. *Stuart* v. *Palmer,* 74 N. Y. 183, 30 Am. Rep. 289; *County of San Mateo* v. *S. Pacific R. Co.* [13 Fed. 722], 8 Sawyer 238; *Hagar* v. *Dist.* 111 U. S. 701 [4 Sup. Ct. 663, 28 L. Ed. 569]."

The inheritance statute of Virginia of 1916 under consideration contains no provision for any notice to or for any opportunity for the tax-payer to be heard before his liability becomes finally fixed, nor is such provision contained in any other statute in Virginia under which such inheritance tax statute may be administered, in so far as has been pointed out in argument or as I have been able to find.

The proceeding by motion against the personal representative provided for in section F of the statute under consideration is for the purpose of enabling the Commonwealth to obtain a judgment against such representative for the penalty therein named and for the amount of the tax, in the event that the personal representative, devisee or person to whom the estate may descend by operation of law fails to pay the tax before the estate on which the tax is chargeable is paid over or delivered. This gives no day in court or other hearing to the devisee or person to whom the estate may pass under the will or by operation of law before the liability upon such persons to pay the tax becomes fixed by the order of the court or clerk pro-

65

vided for in the act. That personal liability is fixed by such order and is enforceable, independently of the express provisions in the statute as to distress warrant not applicable to the case before us, as any other tax obligation by distress warrant (sec. 603 and 622 of the Code) without any further proceeding in court.

In connection with the subject under consideration the Commonwealth takes the following positions, which will be considered and passed upon in their order as stated below:

4. It is urged on the part of the Commonwealth that section 2639-a of Pollard's Code 1904 gives a right of appeal from the action of the clerk in appointing appraisers.

This is true, but such statute gives a right of appeal only from orders of the clerk entered in the exercise of the power and duties conferred and imposed upon clerks by such statute, which do not include the assessment of an inheritance tax under the 1916 inheritance tax statute aforesaid. Hence no right of hearing on the subject of such an assessment is afforded the taxpayer by such an appeal.

5. It is suggested on the part of the Commonwealth that the statute law of the State providing for the assessment of (a) license taxes and of (b) taxes upon the recordation of deeds, etc., are analogous to the inheritance tax statute under consideration.

(a) As to license taxes: They are specific taxes and, upon grounds too well settled to need restatement here, are universally recognized as not falling under the constitutional requirements of notice and hearing aforesaid. *Hagar* v. *District, supra,* 111 U. S. 701 [4 Sup. Ct. 663], 28 Law Ed. 569, at p. 572.

(b) As to taxes upon the recordation of deeds, etc.:

The party to the deed or other instrument of writing, who is taxed upon the property conveyed thereby or which is the subject thereof, is required to present the writing

to the clerk for recordation, and is thereby and then and there given a hearing before the clerk upon the subject of the valuation of the property; and by the fixing by the clerk of the assessment and the amount of the tax, prior to the recordation of the writing, the payer of such tax is given notice of the assessment before there is any obligation upon him to pay it. And the tax must be paid to the clerk, or its payment to the State assumed by him, before the writing can be recorded. Sec. 590, Pollard's Code of Va., and cases there cited. Hence, the assessment by the clerk cannot be made at a later time and so without notice to the parties affected. Thus, upon well settled principles, aside from other considerations, is the requirement of due process of law with respect to notice and a hearing satisfied in such case. As we have seen above, the right to a judicial hearing is not essential to due process of law. But, under the provisions of the 1916 inheritance tax statute under consideration there is no requirement that the tax shall be paid or assessed before a will is probated, or before there is a qualification on the estate, or at the time of such probate or qualification. The later statute provides merely that the court or clerk "* * * before whom a will is probated, or administration is granted, shall determine the inheritance tax, if any, to be paid on the estate passing by will or administration, and shall enter of record in the order book of the court or clerk, as the case may be, by whom such tax shall be paid and the amount to be paid." This statute merely designates what court or what clerk shall act in the premises. It does not prescribe at what time they shall act. Under this statute, the court or clerk designated may make the assessment after the will has been probated, and at the time when the parties who were before the court, or clerk, in that proceeding are no longer present, and of which such parties may have no notice. And, in the case before us, the assessment of the tax and

the order of the clerk imposing it were made and entered, respectively, over six months after the will was probated, and without notice either to the executrix or to any of the other parties assessed with the tax. It is, therefore, obvious that the provisions of statute in this State with regard to taxes upon the recordation of deeds, etc., furnish no analogy to the inheritance tax statute aforesaid.

6. As to proceedings, with respect to the administration of the estate, by which may be ascertained what are the expenses of administration and other charges against the estate including debts, if any, and what are the actual net balances of the estate passing to the legatees or devisees under a will—which alone constitute the amounts of the estate which should be taxed under the statute law under consideration. Such proceedings cannot supply the requisite due process of law to such legatees or devisees for the reason that, even if they are taken, they may not occur, as is true of the case before us, until after the amount of the tax has become fixed by and enforceable under the order of the clerk (or court), without making any deduction whatsoever from the gross amount of the estate.

7. The case of *People's National Bank* v. *Marye* (C. C.), 107 Fed. 570, and S. C., 191 U. S. 272, 24 Sup. Ct. 68, 48 L. Ed. 180, is cited and relied on for the Commonwealth on the question of notice above considered. That case involved the assessment of bank stock which under the statute law involved was reported for assessment by the bank and subsequently assessed or extended on the books by the commissioner of revenue, without notice to the stockholders. Judge Waddill in the court below placed his holding that due process of law did not require notice to the stockholders on the ground that the assessor (the commissioner of the revenue) performed no judicial act in making such assessment, the assessment being made by him upon the market value of the stock as reported to him by the bank,

and that the act itself fixed the amount of the tax. Moreover, as we may here remark, sections 567, 568, and 569 afford the remedy of relief to bank stockholders from erroneous assessments in such cases, and the periodic annual assessments being of record afford the notice, and the periodic assessments and such statute law afford the opportunity to be heard, which are requisite. The Supreme Court decided the case upon a ground which did not involve the questions of notice or hearing. Hence there is nothing in that case in conflict with the conclusion reached above.

8. It is urged on behalf of the Commonwealth that, as the appellants have the right under the jurisdiction of courts of equity, independently of statutory authority, to maintain a suit for injunction against the collection of the tax in question, that remedy affords them due process of law—and the cases of *McMillen* v. *Anderson*, 95 U. S. 37, 24 L. Ed. 335, and *Oskamp* v. *Lewis* (C. C.), 103 Fed. 906, are cited as sustaining such position.

If this position were tenable no tax statute could ever be held to be unconstitutional because of its failure to afford due process of law.

The error in principle in this position of the Commonwealth, as I think, is this: It loses sight of the plenary power of the legislature in the absence of constitutional limitation upon its action. But for the constitutional provision under consideration a statute would be valid which authorized an assessment such as that made in the case before us, although it afforded no notice or opportunity of hearing whatsoever to the taxpayer; and it would furnish unquestionable authority for any assessment which might be made by the assessing officer under it, so long as he complied with the terms of the statute. Those terms having been complied with, the authority of law for the assessment would be complete, its source being the sovereign power of the State, and no court, in a suit for injunction, or in any

other suit, could hold the action of the assessing officer to be unauthorized by the law or invalid, in whole or in part, and the assessment would have to stand as made, without any authority in the court to alter it upon any hearing it could give the taxpayer. The action of the assessing officer would be final and conclusive upon the taxpayer, and no court would independently of statute or of constitutional guaranty, have jurisdiction of a suit for injunction against the collection of taxes so assessed.

Where an assessing officer has not acted in accordance with the terms of a tax statute, his action is without warrant of law and is *pro tanto* invalid. In such case, indeed, at common law, courts of equity, in suits for injunction to restrain the collection of the tax, have jurisdiction to review the action of the assessing officer and correct errors in the assessment; but where the assessing officer has strictly followed his statutory authority no power resides in any court in any suit in the absence of a statute conferring the jurisdiction to disturb that action save upon the single ground that the statute law itself is invalid because it is in conflict with the State or Federal Constitution.

Now in the case before us the clerk, the assessing officer, strictly followed his statutory authority in making the assessment complained of. The court, therefore, had jurisdiction of the case solely upon the ground that it involved the question of whether the statute law of the State under which the clerk acted affords the due process of law which the Federal Constitution (and also the State Constitution as aforesaid) requires and hence is valid, or whether it is invalid for lack of affording such due process. To say that a court of equity, independently of statute, has jurisdiction of such constitutional question and hence of such suit, and that such remedy itself affords the due process of law which the Constitution requires to save the statute law

from invalidity, and that therefore, the court must hold the statute law valid and may go on to enquire into and pass upon the correct amount of the assessment, is to mistake the case before the court for one in which the validity of the statute law is not involved, but only some question concerning the action of the assessing officer being or not being in accordance with the authority of the statute. Where the validity of the statute law itself is involved, that of necessity must be first passed upon, and only in the event that the statute law is found to be constitutional has the court jurisdiction to go on to decree upon other matters by way of giving full relief. Where the statute law itself is invalid the court must so decree and can have no jurisdiction to go on to administer such a law.

As we know the constitutional provision as to due process of law, as applicable to tax legislation, is a limitation upon the legislative power of the States in order to provide a guaranty against any encroachment upon rights of property by statute law of the States which does not provide for due process of law. 9 Fed. Stat. Anno. pp. 424-5, 510, citing, among other authorities, *Munn* v. *Illinois*, 94 U. S. 123, 24 L. Ed. 77, 83, and *Slaughter House Cases*, 83 U. S. (16 Wall.) 36, 21 L. Ed. 394. The object of such constitutional provision is to nullify all State statute law which otherwise, by its authority, might deprive any person of property without due process of law. This is indeed apparent from the language of the constitutional provision under consideration, which, in the Federal Constitution, so far as material, is as follows: "No State shall * * * deprive any person of * * * property without due process of law." The statute law of the State under which authority of assessment for taxation is claimed must, therefore, to be valid, pass the test which is put to every such law by the constitutional provision under consideration. By it, where the provisions of the statute are vouched as the authority

of the assessing officer, the citizen, but for the Constitution, might be deprived of his property without due process of law unless such due process is provided for in the statute law, and hence the necessity for such provision in the statute law itself. And such is the unanimous holding of the decisions on the subject.

As said by this court in *Violett* v. *Alexandria, supra* (92 Va. at p. 574, 23 S. E. at p. 913, 31 L. R. A. 382, 53 Am. St. Rep. 825) : "The law must require notice * * * and give * * * a right to a hearing and an opportunity to be heard. It matters not, upon the question of the constitutionality of such law, that the assessment has in fact been fairly apportioned. The constitutional validity of the law is to be tested, not by what has been done under it, but by what may, under its authority, be done." See to same effect the *San Mateo Case*, 13 Fed. 147, 722; *County of Santa Clara* v. *Southern Pac. R. Co.*, 18 Fed. 410; Cooley on Taxation (1st. ed) pp. 265-6; Dillon on Mun. Corp. sec. 760, pp. 930-31-32; *Stuart* v. *Palmer*, 74 N. Y. 191, 30 Am. Rep. 289; and other authorities cited in the opinion of this court delivered by Judge Cardwell in the Virginia case last cited.

And further: If a suit in equity would lie on the ground that a statute is invalid for failure to afford due process of law, notwithstanding it be true that no statute could be invalid for that reason—which would be a solecism in the law of procedure and plainly untenable as a legal proposition—while theoretically all tax-payers might, by suit for injunction, have the right to obtain a hearing on the subject of the amount of the assessment, in fact, as a rule, the amount involved in the individual case, as compared with the expense of the suit, would be prohibitive of the remedy, and, in general, if that were the sole remedy, taxpayers would have to submit to any assessment made in accordance with the statute law, however unjust, without a hearing and, in fact, without any remedy whatsoever to correct the amount of the assessment.

Accordingly we find that the two cases above named as cited for the Commonwealth (*McMillen* v. *Anderson,* 95 U. S. 37, 24 L. Ed. 335, and *Oskamp* v. *Lewis* [C. C.], 103 Fed. 906) are not in conflict with the views above expressed. In those cases the statute law involved expressly provided for the remedy by suit for injunction which was resorted to by the taxpayers in such cases. But the tax involved in the former case was a license tax, to which, as we have seen above, the due process of law constitutional provision is not applicable. And the statute involved in the latter case did expressly provide for notice to the taxpayer and an opportunity for him to be heard before the assessor before the tax obligation became enforceable and the court so held. The opinion does go further and holds that if it were conceded that section 2781 of the Ohio statute as to the assessment of omitted taxes did not require notice to the tax-payer, "Nevertheless" due process "is provided by the laws of Ohio for the collection of taxes." The opinion then refers, not alone to the statute of Ohio (sec. 5848 of the Revised Statutes) which expressly provides the remedies of suit "to enjoin the illegal levy of taxes and assessments or the collection of either, and of actions to recover back such taxes or assessments as have been collected, without regard to the amount thereof;" but also to other statutory provisions in that State on the subject, among which are the provisions making it the duty of the taxpayer himself annually to list or make a return of his property for taxation. And the provisions of statute are referred to which make a public record of the actual assessment prior to the time when the taxes become due and payable as prescribed by statute. The court then refers to the provisions of said section 5848 of the Revised Statutes as affording the taxpayer the *ultimate* remedies therein specified, but does not consider them as the taxpayer's only remedies. Indeed the opinion says: "The tax laws of

66

Ohio afford the taxpayer many opportunities to be heard for the correction of mistakes, errors, irregularities, and wrongs in the assessment and levying of taxes before boards of equalization, the county auditor, and the State board of remission, with the ultimate right to resort to the courts to enjoin the collection of any tax not legally assessed or levied." The case, therefore, is one in which the statute law of the State, other than the statute giving the remedy by suit for injunction, fully provided for due process of law; and where the remedy by injunction was but superadded to other ample statutory provisions for such due process. And it is not a case in which the statute law prescribed the remedy by injunction as the sole provision therein for due process of law.

Therefore, as I think, neither of these cases is in point and neither of them sustains the position of the Commonwealth aforesaid, which is, in effect, that the statute law, in a case such as that before us, need not provide for any notice or hearing whatsoever.

There is another single case, namely, *Security Trust, etc., Co.* v. *Lexington*, 203 U. S. 323, 27 Sup. Ct. 87, 51 L. Ed. 204 (which is referred to in *Comth.* v. *Carter's Executrix, ante,* p. 469, 102 S. E. 58 this day decided, made the basis of the majority opinion) which on the face of one sentence in the opinion would seem to sustain the position of the Commonwealth which we have now under consideration. It is said in the opinion of the court: "Whether the opportunity to be heard which has been afforded to the plaintiff has been pursuant to the provision of some statute, as in *McMillen* v. *Anderson*, 95 U. S. 37, 24 L. Ed. 335, and *Hagar* v. *Reclamation District No. 108*, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569, or by the holding of the court that the plaintiff has such right in the trial of a suit to enjoin the collection of the tax, is not material." But the statute law involved in that case afforded due process of law. The

illegality of the assessment in that case consisted not in the invalidity of the statute law which authorized, but in the failure of the assessor to make the assessment and the entry of it on the tax books until after the time required by the statute law. It was this action of the assessor which was invalid and not the law. What was done was not done by the authority of the law. It was not a case where the statute law was inadequate, in general or at all, to afford due process of law in its administration. The case before the court was an isolated one in which the State relied on action of an officer which had no warrant of law. In that class of cases a suit for injunction to prevent irreparable injury where the damages have not as yet been suffered, is, as above adverted to, the proper remedy at common law. The plaintiff pursued that remedy, and the State court, in a suit for injunction against the collection of the tax, gave the taxpayer a hearing on the question of the correct amount thereof and reduced it below the amount of the assessment. The Supreme Court held that such a hearing was all the hearing the taxpayer was entitled to in such a case under the constitutional guaranty of due process of law. That case is a very different one from the case before us. It did not involve the question of the invalidity of statute law for lack of provision therein for due process of law, and is, therefore, not in point. And it is apparent from the authorities cited and considered in the opinion that that case did not intend to change the well established doctrine which we have above adverted to on the subject of the necessity in statute law of a certain character for provision therein for due process of law in order to save it from invalidity.

It may be added that the fact that the legislature, in the inheritance tax statute of 1918 (Acts 1918, p. 416) has made express provisions for the notice and hearing aforesaid, and for ascertaining the amount of the expenses of

administration of and other charges against the estate, including debts, if any, all of which are to be deducted, before the tax is levied, is indicative that the legislative view of the need therefor in the statute law is the same as that which is taken above.

I am forced to the conclusion, therefore, that the inheritance tax statute of Virginia of 1916 is in direct conflict with the provisions of the Federal and State Constitutions aforesaid, and is, therefore, void and unenforceable; and hence am constrained to dissent from the majority opinion on this question.

I concur with the majority opinion on the subject of the tax being a succession tax and in the holding therein as to the deductions and exemptions to which appellants are entitled.

PER CURIAM:

[1, 2] This case involves the inheritance tax upon the estate of William H. Jones, Jr., deceased. The questions raised are substantially identical with those raised in the cases of *Commonwealth* v. *Carter's Executrix*, *ante*, p. 469, 102 S. E. 58, and *Heth* v. *Commonwealth*, *ante*, p. 493, 102 S. E. 66, this day decided, and no further discussion is deemed necessary. In our view of the controversy, the Circuit Court of the city of Richmond had jurisdiction to entertain the bill for the correction of the inheritance tax involved, and therefore erred in sustaining the demurrer of the Auditor of Public Accounts, acting for the Commonwealth.

[3] It appears, however, that the clerk simply accepted the appraised value of the estate of William H. Jones, Jr., made one deduction of $15,000 therefrom, and computed the tax on the residue of that gross amount. The estate was devised and bequeathed to the testator's widow and

three children.  In our view, they were entitled to have the expenses of administration and debts, if any, deducted from the gross value of the estate, and then out of the net amount remaining they were each entitled to an exemption of $15,-000, and the tax should then be computed on the residue of the property devised and bequeathed to them severally at the rates prescribed by the statute. ·

The decree will, therefore, be reversed and the cause remanded to the trial court, with instructions to make proper inquiries for the ascertainment of the value of the several shares of the beneficiaries, the proper tax computed thereon, and the erroneous assessment made by the clerk corrected, and proper relief granted.

*Reversed and remanded.*