𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

COMMONWEATH AND OTHERS V. THE UNITED CIGARETTE
MACHINE COMPANY, LIMITED.

June 14, 1917.

Absent, Burks, J.*

1. TAXATION—*Constitutional Law—Validity of Limitation on Time
within which Omitted Taxes May be Assessed.*—Code of 1904,
section 508, as amended by act of March 22, 1916, chapter 491,
section 1, sub-section 2, page 826, providing that, "No muni-
cipal, county or district tax shall be levied or collected on any
assessment of intangible personal property, money or incomes
for taxes alleged to have been omitted from the assessments
for the years prior to nineteen hundred and twelve," is con-
stitutional. This amendment to section 508 was intended as a
statute of repose, and while it may result in releasing some
just obligations and in permitting some intentional wrong-
doers to escape taxation which ought to have been imposed
upon them, the purpose of the amendment was a just one and
the result, in the main, is for the public good.

2. CONSTITUTIONAL LAW—*Power of Legislature—General Rule as to
Validity of Statutes.*—The legislature represents the sovereign
authority of the people, except so far as restrictions are en-
forced by the Constitution in express terms or by strong impli-
cation. We look to the Constitution of the State, not for grants
of power, but for limitations. When the prohibition is not
found in the language of that instrument, or in its frame-work
and general arrangement, there is no solid ground to pro-
nounce the enactment void. The infractions must be clear and
palpable.

3. EX POST FACTO LAWS—*Definition.*—Ex post facto laws relate to
criminal proceedings which inflict punishments or forfeitures
and not to civil proceedings which affect private rights retro-
spectively.

4. CONSTITUTIONAL LAW—*Retrospective Law.*—There are no consti-

*Submitted before Judge Burks took his seat.

tutional inhibitions against the passage of retrospective laws as such. They are not favored by the courts, but to be invalid they must impair the obligation of contracts, destroy vested rights or fall within the definition of *ex post facto* laws.

5. CONSTITUTIONAL LAW—*Due Process of Law—Vested Rights—Taxation.*—The act of March 22, 1916, referred to in the first headnote, is not unconstitutional as depriving the political divisions of the State of property without due process of law. The incipient right to assess omitted property, as conferred by section 508, Code 1904, does not fall within the meaning of a vested property right as recognized by the authorities. The mere existence of a general law which might have been availed of to reduce to a state of property an incomplete right, affords to those who have not perfected their rights thereunder no ground for complaint against a change of the law. There must be something more than a mere expectation based upon anticipation of the continuance of present general laws.

6. CONSTITUTIONAL LAW—*Impairment of Obligation of Contracts—Taxation.*—Nor is the act of March 22, 1916, invalid as impairing the obligation of contracts.

7. TAXATION—*Constitutional Law—Local, Special or Private Laws.*—The act is not a 'local, special or private law," but applies alike to all persons, both natural and artificial, and to all municipalities, counties and districts situated similarly to those involved in this case; and it is not, therefore, in contravention of section 63 of the Constitution of Virginia against the enactment of local, special and private laws. The fact that it happens to redound to the special benefit of certain persons and against the interests of certain localities does not make it a special or local law within the meaning of the Constitution.

8. TAXATION—*Constitutional Law—Section 64 of the Virginia Constitution.*—The act does not violate section 64 of the Virginia Constitution against the surrender or suspension, by either general or special law, of the right and power of the State or any political sub-division thereof to tax corporations or corporate property. It is manifest upon a reading of section 64 that the prohibition in question was intended to prevent the extension of favors and discriminations in favor of corporations as against individuals.

9. TAXATION—*Constitutional Law—Uniformity.*—The act does not violate section 168 of the Constitution.

10. TAXATION—*Constitutional Law—Exemptions.*—The act is not an exemption from taxation within the meaning of section 183 of the Constitution.

11. Taxation—*Constitutional Law—Section 174 of the Constitution.*—Section 174 of the Constitution providing that the failure to assess property for taxation shall not defeat a subsequent assessment for and collection of taxes for any preceding years, cannot properly be construed to mean that the legislature may not validly impose a time limit within which county or district assessments for back taxes must be made. The failure to assess for taxation cannot defeat a subsequent assessment for county and district taxation, but the subsequent assessment must be made in the manner and within the time prescribed by law.

12. Taxation—*Retrospective Laws—Omitted Property—Interest.*— Statutes will not be given a retrospective effect except in cases where such effect was plainly intended by the legislature. This rule applies peculiarly to the laws relating to assessment of property which has been omitted from taxation, the rule being that such assessments are to be made according to the law in force at the time the assessment should have been made. Consequently, where a statute forbade the charge of interest on taxes omitted through no fault of the taxpayer, was subsequently amended allowing the addition of interest in all cases of omitted taxes, the amendment should not be construed to apply retrospectively.

13. Taxation—*Omitted Property—Interest.*—Where the evidence was sufficient to warrant the court in finding that the failure of the defendant in error to make a proper return was due to an honest belief that its intangible property was not subject to taxation because it was a foreign corporation, the court was right in holding that no interest should be charged on omitted taxes, under section 508, Code of 1904, providing that where the omission was due to "no fault of the person charged with the tax no interest shall be charged."

14. Presumption and Burden of Proof—*Presumption of Knowledge of the Law—Taxation.*—In a sense, and as a general rule, it is true that every man is presumed to know the law, and that ignorance of it furnishes no excuse; but when the legislature provided for the remission of interest on taxes omitted from assessment through "no fault" of the taxpayer, it must have meant to recognize a difference between omissions due to wilful and conscious wrongdoing and cases due to honest misapprehension and misconstruction of the tax laws.

Error to a judgment of the Circuit Court of Campbell county, on a motion to correct an erroneous assessment of

taxes.   Judgment for the petitioner.   Defendant assigns error.

*Affirmed.*

The opinion states the case.

*John Garland Pollard, Attorney-General, Volney E. Howard* and *A. H. Light,* for the plaintiffs in error.

*John G. Haythe, Wyndham R. Meredith, A. H. Burroughs* and *F. S. Kirkpatrick,* for the defendant in error.

KELLY, J., delivered the opinion of the court.

This writ of error is a continuation, under some variety of circumstance and contention, of the litigation in which an opinion was handed down by this court at Staunton, in September, 1916.   See *Commonwealth* v. *United Cigarette Machine Co.,* 119 Va. 447, 89 S. E. 935.   After the cause was remanded to the circuit court for further proceedings to be had · therein in accordance with that opinion, it was again heard upon the former record and upon certain additions thereto which will sufficiently appear in the course of the present ·discussion.

Broadly stated, the former proceeding involved the question of taxation, for State, county and district purposes, of capital omitted by the defendant in error from its returns to the commissioner of the revenue for the years 1908 to 1913 inclusive; while the present one involves, partly upon the same and partly upon different issues, this taxation for those years, and also, by virtue of the supplements to the original record, for the years 1914 and 1915.

The former writ of error was matured, argued and submitted before the passage of the act of March 22, 1916,

(Acts 1916, ch. 491, p. 826), which amended section 508 of the Code, in part as follows:

"(2) No municipal, county or district tax shall be levied or collected on any assessment of intangible personal property, money or incomes for taxes alleged to have been omitted from the assessments for the years prior to nineteen hundred and twelve."

At the second hearing in the circuit court, when the judgment now under review was rendered, the defendant in error invoked, and the court applied, the limitation prescribed in the above amendment. This action of the court, which constitutes the basis of the first assignment of error and presents what we regard as the dominant question upon this appeal, is evidenced by the following extract from the judgment: "The court is further of opinion that clause 2 of section 508 of the Code of Virginia, as amended by act of assembly of Virginia approved March 22, 1916, (Acts of Assembly 1916, pages 826-828) is valid and its provisions are applicable to this case, and that county and district taxes should not be levied or collected for said years prior to 1912, but that such taxes should be levied and collected for said years 1912 and 1913, respectively, with five per cent. penalty thereon."

The correctness of this ruling is challenged by the county of Campbell and Blackwater district therein, on the ground that the amendment to the statute, clause 2 of section 508 of the Code, is unconstitutional and void; and their first proposition is, that the enactment "is retroactive, and, in its application to this case, is of the nature and effect of an *ex post facto* law."

We do not understand plaintiffs in error as contending that the amendment to the statute is, strictly speaking, an *ex post facto law.* That it is not such within the meaning of the Constitution is clear under settled and familiar rules and definitions. *"Ex post facto* laws relate to criminal pro-

ceedings which inflict punishments or forfeitures and not to civil proceedings which affect private rights retrospectively. This doctrine has been solemnly settled by the Supreme Court in numerous cases, and is now the accepted rule of construction." Staples, J., in *Danville* v. *Pace*, 25 Gratt. (66 Va.) 1, 9, 18 Am. Rep. 663. See also 1 Min. Inst. (4th ed.) 26; 8 Cyc. 1028, and cases cited in notes 11 and 12.

It is equally true, and equally familiar law, that there are no constitutional inhibitions against the passage of retrospective laws as such. They are not favored by the courts, but to be invalid they must impair the obligation of contracts or destroy vested rights. As was said by Judge Keith for this court in a case cited by counsel for plaintiffs in error, "it cannot be denied that the legislature may, in its wisdom, pass retrospective statutes, sometimes called curative laws, subject to well-defined limitations upon its power. It cannot pass an *ex post facto* law, nor a law which impairs the obligation of a contract; and, since the adoption of the Fourteenth Amendment and the introduction into our Constitution of identical phraseology, it may be conceded that it cannot divest vested rights, because that would be to deprive a citizen of property without due process of law; but until that principle was introduced into the Constitution of the United States by the Fourteenth Amendment, the only limitation upon the power of a State with respect to retrospective laws was, that they should not impair the obligation of contracts, nor partake of the nature of *ex post facto* laws." *Whitlock* v. *Hawkins*, 105 Va. 242, 249, 53 S. E. 401, 403.

We do not perceive any ground upon which the sub-section in question can be assailed as impairing the obligation of a contract, and, as we understand counsel, the real controversy is whether in its application to this case this sub-section deprives Campbell county and Blackwater district of any vested rights, and thus becomes violative of the

constitutional provision against taking property without due process of law. We are of opinion that it does not.

This is not the case of taxes already due and collectible upon a regular and valid assessment. . If it were conceded that as to taxes of this latter character, the right to collect has become a vested property right which subsequent legislation could not defeat, the concession would not influence the decision of this case. Here there had been no assessment and no levy when the act in question was passed, and the mere inchoate right given by section 508 to make the assessment was not sufficient to vest in the county and district any property in the taxes which but for the omitted assessment and levy would have been enforceable. A regular and timely assessment is a prerequisite to the right of levy and collection. The incipient right to assess omitted property, as conferred by section 508, does not fall within the meaning of a vested property right as recognized by the authorities. The mere existence of a general law which might have been availed of to reduce to a state of property an incomplete right, affords to those who have not perfected their rights thereunder no ground for complaint against a change of the law. There must be something more than a mere expectation based upon anticipation of the continuance of present general laws. 4 Words and Phrases (2d ser.), Title "Vested Rights," p. 1166; 8 Cyc. 894, note 37.

Passing now to the other constitutional objections urged against the sub-section 2, none of them appear to us as being sound. We shall deal with them very briefly.

The act assailed is not, as contended, a "local, special or private law," but applies alike to all persons, both natural and artificial, and to all municipalities, counties and districts situated similarly to those involved in this case; and it is not, therefore, in contravention of section 63 of the Constitution of Virginia against the enactment of local, special and

106

private laws. The fact that it happens to redound to the special benefit of certain persons and against the interests of certain localities does not make it a special or local law within the meaning .of the Constitution. *Ex parte Settle*, 114 Va. 715, 77 S. E. 496; 36 Cyc. 986.

The sub-section does not, as claimed, violate section 64 of the Virginia Constitution against the surrender or suspension, by either general or special law, of the right and power of the State or any political sub-division thereof to tax corporations or corporate property. It is manifest upon a reading of section 64 that the prohibition in question was intended to prevent the extension of favors and discriminations in favor of corporations as against individuals.

It does not violate section 168 of the Constitution, directing that all property shall be taxed, that taxes shall be uniform, and shall be levied and collected under general laws. It is simply a limitation upon the time within which the political subdivisions of the State may correct an omission in the assessment of taxes. The mere direction of the Constitution that all property shall be taxed is inoperative without legislation as to the manner of imposing and enforcing the taxes. There can be no collection of taxes except in the manner provided by law; and back taxes can only be levied by special legislative authority. *Marye* v. *Diggs*, 98 Va. 752, 37 S. E. 315, 51 L. R. A. 902; *Whiting* v. *West Point*, 89 Va. 741, 743, 17 S. E. 1.

Section 183 of the Constitution prohibiting the exemption of property from taxation, except as otherwise and as therein provided, is invoked by the plaintiff in error, but that section has no application to this case. Sub-section 2 of section 508 of the Code is not an exemption from taxation within the meaning of the Constitution. The property of the defendant in error was subject to assessment and levy, but no due and timely assesment was made, and, as already indicated, we are of opinion that it was competent

for the legislature to limit the time within which omitted taxes may be assessed.

Nor do we think there is any merit in the contention that section 174 of the Constitution, providing that the failure to assess property for taxation shall not defeat a subsequent assessment for and collection of taxes for any preceding years, can properly be construed to mean that the legislature may not validly impose a time limit within which county or district assessments for back taxes must be made. The section seems to be dealing only with "claims of the State;" and, in any event, the prohibition therein against a statute of limitations for claims for taxes is clearly confined to State taxes. The whole system of assessment and collection of taxes is dependent upon legislation, subject to clear and explicit constitutional restrictions. The failure to assess for taxation cannot defeat a subsequent assessment for county and district taxation, but the subsequent assessment must be made in the manner and within the time prescribed by law.

We have not attempted any extensive discussion of the various objections made to the validity of the act in question. Taking separately and as a whole the constitutional provisions relied upon to defeat it, we are of opinion that none of them will be violated by upholding the statute. Similar statutes are found in many other States having constitutional requirements similar to those in Virginia upon the subjects of the uniformity of and exemptions from taxation, and they have been very generally upheld.

The amendment to section 508 was intended as a statute of repose, and while it may result in releasing some just obligations and in permitting some intentional wrongdoers to escape taxation which ought to have been imposed upon them, the purpose of the amendment was a just one and the result, in the main, is for the public good.

We are of opinion that the legislature had the power to

pass this law; and we are quite sure that the power is not sufficiently doubtful to justify us in declaring the act unconstitutional.

"The legislature represents the sovereign authority of the people, except so far as restrictions are enforced by the Constitution in express terms or by strong implication. We look to the Constitution of the State, not for grants of power, but for limitations. When the prohibition is not found in the language of that instrument, or in its framework and general arrangement, there is no solid ground to pronounce the enactment void. The infractions must be clear and palpable." *Town of Danville* v. *Pace, supra.*

The second assignment of error is that the court erroneously refused to require interest to be paid upon the taxes ascertained to be due. The language of the court's order in this regard was as follows: "The court is further of opinion from the evidence that the omission of its capital from assessment for taxation for any of the said years was through no fault of the said United Cigarette Machine Company, Limited, and that no interest should be added to the taxes for any of said years, either State, county or district."

Section 508 of the Code, prior to the amendment of 1916, provided that interest should be charged on omitted taxes, but added that where the omission was due to "no fault of the person charged with the tax no interest shall be charged." When this case was remanded upon the former appeal, the question of interest was left open, the opinion of this court by Judge Cardwell directing that interest be charged, "unless it shall appear from the evidence adduced at the next hearing that the property was omitted through no fault of the defendant in error." Section 508, as amended, now provides for the addition of interest in all cases of omitted taxes, regardless of the question of the taxpayer's fault. The plaintiffs in error insist that whether

the court applies the original or the amended section to the omitted capital of the defendant in error, interest must be charged in either case—under the original because of the alleged fault of the defendant in error, and under the amendment because its plain terms so direct.

The court was right in applying the original provisions of the statute with reference to the interest. We have already seen that while it is competent to pass retrospective laws affecting civil rights and liabilities, they are not favored by the courts. Statutes will not be given a retrospective effect except in cases where such effect was plainly intended by the legislature. This rule applies peculiarly to the laws relating to assessment of property which has been omitted from taxation, the rule being that such assessments are to be made according to the law in force at the time the assessment should have been made. 27 Am. & Eng. Ency. of L., pp. 700-701; *State* v. *Simons,* 70 Miss. 485, 502, 12 So. 477; *James, Auditor,* v. *Am. Surety Co.* (Ky.), 117 S. W. 411, 413; *Market Nat'l Bank* v. *Belmont,* 137 Mass. 407, 408.

The court was also right in holding that no interest should be charged. As to the years 1914 and 1915, the order of the court shows that the defendant in error correctly reported its assets to the commissioner, and counsel for plaintiff in error concede, in their reply brief, that interest for those years should not be awarded.

As to the years involved prior to 1914, we think that the evidence was sufficient to warrant the court in finding that the failure of the defendant in error to make a proper return was due to an honest belief that its intangible property was not subject to taxation because it was a foreign corporation. It was so advised by counsel, and the circuit court held in accordance with that view. This court, on appeal, decided otherwise, but until that decision was rendered the question was an open one in this State and there was room for an honest difference of opinion upon it. In a

sense, and as a general rule, it is true that every man is presumed to know the law, and that ignorance of it furnishes no excuse; but when the legislature provided for the remission of interest on taxes omitted from assessment through "no fault" of the taxpayer, it must have meant to recognize a difference between omissions due to wilful and conscious wrongdoing and cases due to honest misapprehension and misconstruction of the tax laws. Any other conclusion would render the statute in this respect meaningless, since in every case of omitted taxes the taxpayer is in a sense in default. There is no moral or legal wrong in seeking non-taxable investments, provided it be done in good faith; and while we think the law should not, and we have held that in Virginia it shall not, afford immunity from taxation on intangible personal property of corporations situated like the defendant in error, we are unable, upon the evidence now before us, to hold that the circuit court erred in deciding that it was not a wrongdoer within the meaning of the statute.

There were a number of cross-assignments of error. We have considered all of them with care, and are of opinion that, in so far as they are not fully met (as most of them are) by the present and former decisions in this controversy, they are without merit, and that the judgment of the circuit court thereon was plainly right.

*Affirmed.*