# Richmond

## COUNTY OF SUSSEX V. JARRATT.

March 17, 1921.

Reheard April 6, 1921.

Absent, Burks and Sims, JJ.

1. TAXATION.—*Injunction by Taxpayer—Jurisdiction of Equity.*— Equity has jurisdiction to entertain a suit for injunction to enjoin the treasurer of a county from levying certain taxes upon bank stock owned by complainants, alleged to be due for certain years, where no assessment was made for such years.

2. TAXATION.—*Jurisdiction of Equity to Enjoin Collection of Taxes —Adequate Remedy at Law.*—Acts 1916, ch. 64, provides that no suit for the purpose of restraining the collection or assessment of any tax shall be· maintained, except when the party has no adequate remedy at law.  By section 2389 of the Code of 1919 (section 571 of the Code of 1887) a person assessed with county levies, and aggrieved by such assessment, can apply for relief to the circuit court of the county wherein such assessment was made.  Under these provisions, where there has been an assessment, however erroneous, there can be no relief in equity, but where there is no assessment, the remedy by motion does not apply, and as the party is without adequate remedy, he may maintain his suit for an injunction.

3. TAXATION.—*Bank Stock—Assessment.*—Under section 1040a of the Code of 1904 and Acts 1912, p. 19, an assessment of bank stock is fatally defective where the names of the stockholders, the number of shares of stock held by each and the value of the same, and the amount of taxes respectively due, are not given; and the several banks are named as the parties assessed, the property taxed in each case being the capital of the bank, and the total tax being the aggregate produced by the several rates on this capital.  Whatever might have been the intent of the commissioners, they actually assessed the capital stock of the banks, and an assessment of the capital is not an assessment of the shares in the names of the several stockholders.

4. BANKS AND BANKING.—*Shares of Stock Distinguished from Capital—Taxes.*—The shares of stock of a bank are distinct and

different from its capital and may be taxed though the capital itself be invested in non-taxable securities.

5. TAXATION.—*Assessment—Compliance with Law.*—Taxing officers must make their assessments in the manner prescribed by law. The officers of the State, in the collection of revenue, are as much bound to observe the law and to proceed in the mode pointed out by the statute as an individual is required to observe the law in the enforcement of any right.

6. TAXATION.—*Omitted Taxes—Assessment by Commissioners.*— Under section 508 of the Code of 1904 it is the duty of the commissioners of revenue, apart from any suggestion by the board of supervisors, to assess for taxation within the prescribed limits any property which upon ascertainment appeared to have been omitted for any previous years. But the subsequent assessment must be made in the manner and within the time prescribed by law.

7. TAXATION.—*Necessity of Assessment—Levy and Assessment Distinguished.*—Every assessment rests upon a proper levy of a tax. In fact, it may be said, no levy, no assessment. Levy and assessment have very different meanings. The levy of taxes is a legislative function, and declares the subject and rate of taxation. Assessment is *quasi* judicial, and consists in making a list of the taxpayer's property, and fixing its valuation, or appraisement.

8. TAXATION.—*Assessment—Necessity of Levy.*—Although under section 508 of the Code of 1904 it would be the duty of a commissioner of revenue to assess for taxation bank stock omitted from the assessments of previous years, if there had been valid levies on such stock for such years, yet where there are no such levies, the commissioner has no authority to make an assessment.

9. TAXATION.—*Bank Stock—Levy.*—The order of a board of supervisors levying taxes provided for a levy on the assessed value of the real and personal property of the county.

   *Held:* That the words "assessed value of the real and personal property of the county" did not include bank stocks in the county, in the absence of an intent of the board to include such stocks.

10. TAXATION.—*Levy—What Included in Levy.*—A board of supervisors need not consciously have in mind every species of personal property when a levy is ordered, to affect it with the levy, but property that they specifically do not intend to tax will not be taxed merely because general words are used.

11. TAXATION.—*Strict Construction of Statutes.*—Statutes imposing taxes are to be construed most strongly against the govern-

85

ment and in favor of the citizen, and are not to be extended by implication beyond the clear import of the language used. Wherever there is a just doubt, that doubt should absolve the taxpayer from his burden.

12. TAXATION.—*Necessity of Levy—Assessment—Authority of Court of Equity.*—Where the board of supervisors of a county did not order a levy on bank stocks in the county for certain years, upon discovery that there was no assessment upon such stocks for these years, there was no authority in the commissioners of revenue to make an assessment for the same; and that being so, there is no authority in a court of equity in a suit by the taxpayers to make such an assessment, since it could only do in this respect what the commissioners might have done.

13. TAXATION.—*Levy—Back Taxes.*—There is no statute empowering a board of supervisors to lay a levy for taxes omitted in antecedent years. There can be no collection of taxes except in the manner provided by law; and back taxes can be levied only by special legislative authority.

UPON PETITION FOR REHEARING, APRIL 6, 1921.

14. TAXATION.—*Levy—Commissioner of Revenue.*—A commissioner cannot lay a levy of any sort. His duties are to make the assessments consequent upon a properly ordered levy, whether the levy was made by the General Assembly, the board of supervisors of a county, or the council of a city.

15. TAXATION.—*Levy—Back Taxes—Power of Board of Supervisors.*—Code of 1904, section 508, as amended by Acts 1916, ch. 491, relates to assessing officers only, and is intended to increase their powers of assessment, so as to include antecedent years, but does not confer upon boards of supervisors the power to make levies for the years that are passed. Such power might be afforded by the General Assembly, but it should be clearly given, not derived by doubtful implication.

16. TAXATION.—*Back Taxes—Power of Supervisors to Make Nunc Pro Tunc Levies.*—Code of 1904, section 508, as amended by Acts 1916, ch. 491, does not afford to the supervisors of a county the power to make *nunc pro tunc* levies of taxes for past years, notwithstanding that the word "levies" is used at several places in the body of the act, as when so used it is in relation to and in connection with the powers and duties of assessing officers.

17. TAXATION.—*"Levy" Used as Referring to the Act of Collection and not to the Act of Laying Taxes.*—Acts 1916, ch. 491, pro-

viso 2, enacts that no municipal, county, or district tax shall
be levied or collected on any assessment of intangible personal
property, alleged · to have been omitted from assessments for
years prior to 1912.

*Held:* That the word "levy," as here used, referred, not to the
legislative act of imposing a tax, but to the act of an officer
collecting the tax tickets that are issued pursuant to an assess-
ment. Taxes are not "levied on assessments;" assessments are
consequent upon levies, using the word "levies" to refer to
the legislative act of imposing a tax.

18. TAXATION.—*Assessment of Omitted Taxes—Necessity for Levy
of Tax.*—Commissioners of the revenue have power to assess
for omitted taxes in antecedent years, but Acts 1916, ch. 491,
does not empower these officials to assess property not charged
with a tax by some proper tribunal.

19. TAXATION. — *Constitutional Law — Mandate of Constitution—
Necessity of Action by Legislature.*—The mere mandate of the
Constitution that taxes shall be laid on certain property by
the General Assembly, or a board of supervisors, does not by
itself impose the tax, though failure to do so may be a breach
of duty by the officials charged therewith. Some positive ac-
tion to that end must be taken by the legislative body.

Appeal from a decree of the Circuit Court of Sussex
county. Decree for complainants. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Thos. H. Howerton* and *Buford & Peterson,* for the ap-
pellant.

*Geo. Bryan* and *Wm. B. Cocke,* for the appellee.

SAUNDERS, J., delivered the opinion of the court.

These are two suits in equity, brought, respectively, by
S. B. Grant, for himself and other stockholders similarly
situated, and B. F. Jarratt, suing in like fashion, against
the county of Sussex. The complainant, Grant, is the owner
of one share of the capital stock of the Bank of Waverly,

and the complainant, Jarratt, of thirty-three shares of the capital stock of the Bank of Stony Creek, both banks situate in the county of Sussex. The object of these suits was to enjoin the treasurer of said county from levying certain taxes alleged to be due by the said complainants to the said county for the years 1912, 1913 and 1914. This alleged claim of the county arose in the following fashion:

The board of supervisors of the county of Sussex did not make a levy for the years 1912, 1913 and 1914 on the shares of the stock of banks in that county. Some years later, the board essayed to collect these taxes. Its first order to this end was made on December 20, 1917, and is as follows: "Walter Harrison, commissioner of the revenue for district No. 1, is directed to assess bank taxes on bank stock in district No. 1 for the years 1912, 1913 and 1914, and report at next meeting of this board."

The second order was made at a meeting of the board on January 7, 1918: "Ordered that G. O. Wrenn, commissioner of the revenue for district No. 2, be and he is hereby instructed to make a levy, assessing the banks in district No. 2 with levy for the county and district purposes for the years 1912, 1913 and 1914, in accordance with an order heretofore entered in this matter, and the clerk is instructed hereby to certify a copy of same to said G. O. Wrenn, commissioner of the revenue."

This order is not very clear, inasmuch as it directs the commissioner in district No. 2 to "make a levy assessing the banks in his district with the levy for the county and district purposes for the years 1912, 1913 and 1914, in accordance with an order heretofore entered in this matter." The order theretofore entered was an order directing Walter Harrison to assess back taxes on bank stock in his district (No. 1). Of course, strictly speaking, the board could not direct a commissioner to make a levy, nor could the commissioner in district No. 2 make a levy assessing the

banks in his district in accordance with an order directing the commissioner in another district to assess back taxes on bank stock in that district.   However, petitioner in error construes the second order to constitute a direction to the commissioner in the second district to assess the "bank stock" in his district for the years 1912, 1913 and 1914, and this construction will be adopted for the purposes of a decision of this controversy.

In January, 1918, the commissioner of the revenue for district No. 1 made an assessment for the years referred to in the order of December 20, 1917.   This assessment, as will be noted from a copy of the same, was upon the banks in the commissioner's district, and on the aggregate amount of their capital.   It contained neither the names of the stockholders of the banks nor the number of shares held by them, respectively.   This assessment is as follows:

BANK STOCK OF THE BANKS OF STONY CREEK AND JARRATT.

| Name of Person. | Residence. | Aggregate Amt. Assessed. | Total Amt. Levied. | Total Levy for County & Dist. |
|---|---|---|---|---|
| Bank of Stony Creek. | Stony Creek, Va. | | | |
| 1912 | " | $18,020 | $1.20 | $216.24 |
| 1913 | " | 18,300 | 1.15 | 210.45 |
| 1914 | " | 20,900 | 1.30 | 271.90 |

The assessment of the Bank of Jarratt is to the like effect as the above, and need not be given.

About this same time the commissioner of the revenue for district No. 2 reported under the order of January 17, 1918.   He testifies that he was instructed by the board to assess the bank stocks in his district for county and district purposes for the years 1912, 1913 and 1914.   He filed his record book showing his official action under this instruction.   All the banks in his district were assessed in the same fashion, so that an extract as to one bank only will be sufficient in this connection.

BANK OF WAVERLY, WAVERLY, VA.

| Year. | Ag. Capital. | Gen. Co. | Co. Sch. | Dist. Rd. | Dist. Sch. | Total. |
|---|---|---|---|---|---|---|
|  |  | 40 | 20 | 25 | 20 | $1.05 |
| 1912 | $95,372.79 | $381.49 | $190.74 | $238.43 | $190.75 | $1,001.41 |
|  |  | 40 | 20 | 20 | 20 | $1.00 |
| 1913 | 103,500.00 | 414.00 | 207.00 | 207.00 | 207.00 | 1,035.00 |
|  |  | 40 | 20 | 20 | 20 | $1.00 |
| 1914 | 112,000.00 | 450.32 | 225.16 | 225.16 | 225.16 | 1,125.80 |
|  |  | $1,245.81 | $622.90 | $670.59 | $622.91 | $3,162.21 |

Commissioner Wrenn testifies that his record is entitled, "Assessment of bank stocks for county, district and road levies for the year 1917," and under the title "name of person" are listed for the years 1912, 1913 and 1914 the Bank of Waverly, Waverly, Va., and the Bank of Sussex and Surry, Wakefield, Va., and the Farmers Bank of Wakefield, Wakefield, Va. Further, that this was the only assessment made for the years 1912, 1913 and 1914 for county and district purposes. The assessments as made, *supra,* for the years 1912, 1913 and 1914 were furnished to the treasurer of Sussex in December, 1917, and January, 1918. No other assessments for these years were furnished him until some time in December, 1918, when Commissioner Wrenn furnished him with an intemized list of the stockholders of the banks in his district.

Upon receipt of these alleged assessments, the treasurer applied to the banks for payment of the taxes, and posted one notice. The banks asked for a little time for consideration. This was given. At its expiration, on advice of counsel, they refused to pay said taxes. The treasurer prepared to collect said taxes. Thereupon, in September, 1918, B. F. Jarratt, for himself and other stockholders of the Bank of Stony Creek, and S. B. Grant, for himself and other stockholders of the Bank of Waverly, filed their respective bills in equity against the county of Sussex for the purposes stated, *supra.*

These causes, by consent of counsel, were consolidated. Demurrers and answers were respectively filed, and depositions taken.

On the hearing, the court overruled the demurrers, entertained the bills, and enjoined the treasurer of Sussex county from taking any steps to collect the taxes alleged to be due to Sussex county upon complainants' shares of stock in their respective banks for the years 1912, 1913 and 1914. An appeal from this decree was allowed by one of the judges of this court.

By a stipulation of counsel, it was agreed that the cases, *supra,* should be considered as test cases, in the matter of the several liabilities of the several banks of Sussex county and their respective stockholders, for county taxes alleged to be due to the county of Sussex for the years 1912, 1913 and 1914.

The same parties who are complainants above endeavored to secure, by motion, the same relief sought in their bills in equity. These motions were dismissed in the Circuit Court of Sussex county, and writs of error were secured to the rulings of the court by the county of Sussex.

The same stimpulations were made between counsel in respect of these motions as were made in regard to the bills in equity. Should the proceedings in equity be sustained, there will be no occasion to make further reference to these motions.

Appellant, the county of Sussex, assigns the following errors in the consolidated proceedings in equity:

First: The court, sitting as a court of equity, was without jurisdiction, and erred in refusing to dismiss the bills, and require the plaintiffs to proceed by motion under section 571 of the Code 1887.

Second: The court, on the merits, erred in affording the relief prayed by the plaintiffs, instead of requiring them to pay the levies with which they were properly chargeable,

and, to that end, exercising its power to correct defects and irregularities, if any, in the assessments.

The act of February 24, 1916, provides that "no suit for the purpose of restraining the collection or assessment of any tax, State or local, shall be maintained in any court of this Commonwealth, except when the party has no adequate remedy at law, * * *." Laws 1916, c. 64. A person assessed with county levies, and aggrieved by such assessment, can apply for relief to the circuit court of the county wherein such assessment was made, under section 2389, Code 1919 (sec. 571, Code 1887); but by the very terms of this section the remedy is afforded only to parties who have been assessed and who are aggrieved thereby. An assessment is a *sine qua non* of relief under this section.

[1, 2] Appellant urges that the trial court was without jurisdiction in equity in the case in judgment, and cites *Commonwealth* v. *Tredegar Co.*, 122 Va. 506, 95 S. E. 279, and *Barrow* v. *Prince Edward Co.*, 121 Va. 1, 92 S. E. 910. In both of these cases the court held that the remedy at law was full and complete—in a word adequate to afford the relief sought in equity. Hence, the jurisdiction of equity was excluded by the very terms of the statute. It may be conceded that if there was an assessment of taxes against the complainants in the case under consideration, however erroneous such assessment may have been, the authorities, *supra*, would be in point, and the decree of the circuit court must be reversed. But the circuit court held, upon the facts, that there had been no such assessment, and that the remedy by motion did not apply. The following is taken from the opinion of the circuit court:

"The court is also of the opinion that the complainants' remedy is in equity, and not under the statute for the correction of erroneous assessments. To give jurisdiction under the statute, there must be an assessment, and a person aggrieved by such assessment (secs. 567 and 571). In

*Main Street Bank* v. *City of Richmond,* 122 Va. 574, 95 S. E. 386, decided March 21, 1918, the court says:

" 'It is unnecessary for us to consider in this case, whether or not the error on the part of the officials of the bank can be corrected upon the motion of any stockholder who may be entitled to relief; it is clear that it cannot be corrected upon the motion of the bank, under sections 567 and 571, for its property has not been assessed and its funds are in no way involved'."

See also. *Commonwealth* v. *Carter's Ex'x,* 126 Va. 469, 102 S. E. 58; *Withers* v. *Jones,* 126 Va. 524, 102 S. E. 68, in which the court held that as the appellants were without remedy at law, the statute had no application to the cause before them. It is very evident from the citations made that we must determine primarily whether the complainants, *supra,* were aggrieved by an assessment of their property. Once this determination is made, a conclusion of the question of jurisdiction will be easily derived.

The statutes prescribe how bank stocks shall be taxed for State and county purposes. The law applicable to taxation of bank stock for the years 1912, 1913 and 1914, so far as the State tax was concerned, was contained in Acts 1912, p. 19. This law provided that no tax should be assessed upon the capital of any bank, but that the stockholders in such bank should be assessed and taxed on their shares of stock therein. The banks are required to report lists of all the shares of stock, and of their stockholders, and the actual value of the shares of stock held by each stockholder.

The commissioner of the revenue, upon the receipt of these reports, is required to assess each stockholder upon the value of the shares of stock owned by him as reported, less certain deductions. Three assessment lists are to be made out, one for the bank, one for the auditor, and the other for the commissioner.

86

The law applicable to the taxation of bank stocks for county purposes during the years 1912, 1913 and 1914 was section 1040-a of the Code of 1904, as follows:

(1) "Hereafter each county or city in which any bank, national or State, is so located, may, subject to the conditions mentioned below, tax all the shares of stock issued by such bank, so located within its limits, at the same rate as is assessed upon other moneyed capital in the hands of individuals residing in such county or city."

(2) That in so taxing said shares the said county or city authorities, respectively, shall follow the mode of assessment and manner of collection prescribed by statute for the collection of State taxes upon said shares." (Acts 1889-90, p. 111; Acts 1902-3-4, p. 412.)

This statute very explicitly provides that in respect of taxing bank shares by a county, the proper authorities must follow the mode of assessment and manner of collection prescribed in respect of State taxes upon such shares.

[3] Looking to the reports of the commissioners, cited *supra*, it will be seen that these officers, in the alleged assessments of 1917 and 1918, did not comply in a single respect with the requirements of the statute prescribing the mode in which bank stock shall be assessed for county purposes. The names of the stockholders, the number of shares of stock held by each, and the value of the same, and the amount of taxes respectively due, are not afforded. The several banks are named as the parties assessed for the years 1912, 1913 and 1914, the property taxed in each case is the capital of the bank, and the total tax is the aggregate produced by the several rates on this capital. It appears, therefore, from the record that whatever the commissioners may have had in mind, they actually assessed the capital stock of the banks. Of course, it is true that the aggregate of the stock held by the individual stock-

holders is the capital of a bank, but the shares are different from the capital, and an assessment of the capital is not an assessment of the shares in the names of the several stockholders.

[4] "The shares of stock of a bank are distinct and different from its capital, and may be taxed though the capital itself be invested in non-taxable securities." *Union Bank* v. *City of Richmond,* 94 Va. 316, 26 S. E. 821.

[5] Officers must make their assessments in the manner prescribed by law. "The officers of the State in the collection of revenue are as much bound to observe the law and to proceed in the mode pointed out by the statute as an individual is required to observe the law in the enforcement of any right." *People* v. *Biggins,* 96 Ill. 481.

Assessment being an indispensable element of jurisdiction in the statutory remedy, and assessment of the banks' capital stock not being an assessment of the shares of stock owned by the stockholders, the complainants in the case in judgment had no adequate remedy at law with which to meet the threatened attack upon their property. The statute excludes the jurisdiction of equity in those cases only in which the remedy at law is complete and effective. The trial court did not err in holding that the complainants' remedy was in equity.

Appellant contends that if the jurisdiction of equity is sustained, the court can proceed to make a proper assessment for the years in controversy—in a word, that the court can now do what the commissioners should have done when they assessed the capital of the banks for the omitted years. Conceding this contention to be sound, it becomes necessary to ascertain what the commissioners might have done under the orders of the board cited heretofore.

These orders conferred no authority upon the commissioner of the revenue to make *nunc pro tunc* assessments

for the omitted years. That authority, however, is afforded by section 508 of the Code.

"Under section 508 of the Code of 1904, it is the duty of the commissioner of the revenue to assess for taxation any property which he finds has not been assessed for taxation for any previous years within the limits prescribed by that section." *Commonwealth* v. *Tredegar Co., supra.*

[6-8] Hence, it was the duty of the commissioners, apart from the suggestion of the board, to assess for taxation within the prescribed limits any property which upon ascertainment appeared to have been omitted. But "this subsequent assessment must be made in the manner and within the time prescribed by law." *Commonwealth* v. *United Cirgarette Machine Co.,* 120 Va. 835, 92 S. E. 901. Every assessment rests upon a proper levy of a tax. In fact it may be said, no levy, no assessment. "Levy and assessment have very different meanings. The levy of taxes is a legislative function, and declares the subject and rate of taxation." Hilliard on Taxation, p. 290. Assessment is *quasi* judicial, and consists in making a list of the taxpayer's property, and fixing its valuation, or appraisement." *Id.* 29.

"The first step in taxation, whether by the State or inferior political subdivisions of the State, is the levy by the proper legislative body. Until this is done, there can be no assessment, or collection." 27 Am. & Eng. Ency. L. (2d ed., p. 730.)

"It is elementary that property, however taxable, that is, however liable to taxation, cannot be assessed and subjected to consequent taxes unless the authority which had the right to speak has been heard thus to command. In other words, property in itself taxable cannot be assessed and be made to contribute, by taxation, to government expenses, where the proper authority has not directed its assessment."

"Since it is a settled principle that, however clear the power may be, or even the duty, of the legislative body to levy a tax on any particular species of property, until that power has been exerted the burden cannot be imposed and the legislative intent to impose a tax must 'be explicitly and distinctly shown. It cannot be extended by implication beyond the clear import of the language used. Hence, where there was no legislative enactment directing the assessment on a man's income, such income could not be assessed and payment of the tax enforced."

"The levy, that is, the governmental act which determines that a tax shall be laid, as distinguished from the levy on property incident to the enforcement of the collection of the tax, has been embodied in constitutional provisions in some of the States without the assistance of the legislature; but, as a general rule, a levy can be made only by legislative enactment or authority, within the limits and in the form prescribed by the organic law, and by a duly authorized and properly constituted body. Thus, where a law required a county levy to be laid by a majority at least of the justices of the county, it was held that any less number, although they might constitute a court for a different purpose, had no jurisdiction in the case of a levy." *Id.*

It becomes, therefore, necessary to inquire whether, if the court should now undertake to make an assessment of the bank stock for the years 1912, 1913 and 1914, upon the theory that the court can do what the commissioners should have done, that assessment would rest upon any levy of local taxes for such years.

It is contended by appellant that the word "may," in section 1040-a, providing for taxation of bank stock by counties, means "must." If it means "must," the query would still recur: Did the supervisors of Sussex county, by appropriate orders, levy a tax on bank stock within said county during the said years?

The orders of the board of supervisors of Sussex county ordering levies for the several years 1912, 1913 and 1914 are the same. Hence, we need cite only the orders for one year, the year 1912. These orders are as follows:

"At a meeting of the Board of Supervisors for the county of Sussex, held at the courthouse thereof, Thursday, May the 16th, 1912.

"Ordered that a levy of forty cents on the one hundred dollars assessed value of the real and personal property of the county be laid for general county purposes.

"Ordered that a levy of twenty cents on the one hundred dollars assessed value of the real and personal property of the county be laid for the county free schools," etc.

"Ordered that a tax be levied on the capital invested, used or employed by the merchants in the conduct of their business in accordance with an act," etc.

[9, 10] It is insisted in substance, that as bank stocks are personal property the words "assessed value of the real and personal property of the county of Sussex," included bank stocks in the county, and were efficient to levy a tax on same without regard to the intent of the board at the time these words were used. With that contention we cannot agree. A board need not consciously have in mind every species of personal property when a levy is ordered, to affect it with the levy, but property that they specifically do not intend to tax will not be taxed merely because general words are used. Further, it is doubtful whether standing alone, the words used would levy a tax on bank stock.

[11] Section 1040-a prescribes, that "a county may tax all shares of stock issued by a bank," etc., "at the same rate as is assessed upon other moneyed capital in the hands of individuals residing in such county." The language used in this section suggests that a county intending to tax bank stock should use language more specific than the general

terms used by the board in the orders cited. Moneyed cap-
ital is a form of personal property, but it is taxed by a
special order in the orders, *supra,* to-wit: "Ordered that a
tax be levied on the capital invested, used, or employed by
the merchants of the county," etc. Moreover, the board that
used the words "real and personal property of the county,"
did not construe them to include bank shares. No effort
was made during the years 1912, 1913 and 1914 to have
the bank stocks assessed under these orders. Further, the
members of the board testify that they did not intend to tax
bank shares during these years. The president of the
board testifies that they designedly omitted this taxation
lest, if laid, the banks would increase the rate of interest
to borrowers in the county. Other members of the board
do not agree with the president that they did not tax bank
shares as a matter of county policy but that they omitted to
do so because they were not aware that they possessed the
necessary power of taxation. All the witnesses agree that as
a matter of fact bank stock was not taxed during the years
in question. Further, when the board was apprised in 1915
that they possessed the right to tax bank shares for county
purposes, they did not rely upon the general language cited
above as sufficient to effect such taxation, but specifically
included bank stocks, grouping it with capital invested in
mercantile business, as will appear from the the following
extract taken from the proceedings of the board at its meet-
ing to lay the tax levy for the year 1915-16: "Ordered that
a levy of fifty-five cents on the one hundred dollars of all the
property in the county of Sussex, both real and personal,
subject to local taxation, including bank stock, and capital
invested or employed in mercantile business, as provided,"
etc. Like words were used in the levy of county taxes in the
year 1916, and presumably from that time forward. Apart
from the direct and positive testimony of the members of
the board, the above change in the wording of their orders
very clearly shows that the board did not regard the lan-

guage used in 1912, 1913 and 1914 as levying a tax on bank stocks. Further, in view of the doubt whether the orders of the years *supra* impose a tax on these stocks, the persons sought to be charged with such a tax are entitled to the benefit of the principle announced in *Commonwealth* v. *Hutzler,* 124 Va. 138, 97 S. E. 775, as follows: "It is well settled and familiar law that statutes imposing taxes are to be construed most strongly against the government and in favor of the citizen, and are not to be extended by implication beyond the clear import of the language used. Whereever there is a just doubt, that doubt should absolve the taxpayer from his burden." See also *Commonwealth* v. *Herbert,* 127 Va. 291, 103 S..E. 645, where it is stated: "It is a well settled and a just and important rule in the construction of all tax laws, that no tax shall be exacted from the citizens of the Comonwealth except in those cases which are clearly embraced in the taxing statutes."

[12]   To the same effect *Brown* v. *Commonwealth,* 98 Va. 366, 36 S. E. 485; "Laws imposing a license, or tax, are construed strictly, and when there is doubt as to the meaning or scope of such laws, they are construed more strongly against the government and in favor of the citizen." See also *Supervisors* v. *Tallant,* 96 Va. 723, 32 S. E. 479.

We are clearly of opinion that the board of supervisors of Sussex county did not order a levy of bank stocks in that county for the years 1912, 1913 and 1914. This being so, upon discovery that there was no assessment upon such stocks for these years, there was no authority in the commissioners to make an assessment for the same. Therefore, there is no present authority in this court to make an assessment, since we can only do in this respect what the commissioners might have done.

[13]   The contention, however, is made that the orders of the board, of date December 20, 1917, and January 7,

1918, in some fashion constitute a levy on bank stock in the county of Sussex for the omitted years. On their face these orders are not levies, but even conceding that they were intended to have that effect, and in *nunc pro tunc* fashion to levy a tax on the shares of bank stock in said county for the years referred to, the lack of authority to make such orders is apparent.

We are not aware of any statute empowering a board of supervisors to lay a levy for taxes omitted in antecedent years.

"There can be no collection of taxes except in the manner provided by law, and back taxes can be levied only by special legislative authority." *Commonwealth* v. *United Cigarette Machine Co.,* 120 Va. 842, 92 S. E. 901.

"When authority is not conferred by statute, county commissioners cannot levy taxes upon property for the years that have passed, in which such property has escaped them." Blackwell on Titles (5th ed.) sec. 298.

"The powers of a municipal corporation are to be construed strictly, and the power to tax must be plainly and unmistakably conferred. In the absence of legislative authority, the corporation has no power to levy back taxes, and when the charter empowers the council to order the collection of taxes for any year, this refers to taxes previously assessed, there being nothing in the charter authorizing a retrospective assessment.

"It is a settled principle that, in the absence of legislative authority, a municipal corporation has no power to levy back taxes. Such authority can exist only by statute." 2 Dill. Mun. Corp. (4th ed.) sec. 751.

"The powers and duties of boards of supervisors are fixed by statute, and they have no other powers than those expressly conferred, or necessarily implied." *Supervisors* v. *Powell,* 95 Va. 635, 29 S. E. 682.

87

Hence, even if the orders, *supra,* were intended to operate as levies· on bank stock in the county of Sussex for the omitted years, they were invalid.

Our conclusions summarized are:

First: There was no levy on bank shares in the county of Sussex for county purposes, during the years 1912, 1913 and 1914.

Second: That as there was no levy made on such shares during the years when it was competent for the board to make a levy, the board lacked the authority to make this levy in succeeding years.

Third: That there was no levy on these shares during the years in question, and no authority to make it in succeeding years, the commisioners in succeeding years could not assess said shares for taxation.

Fourth: That as this court has no present authority to do what the board of supervisors and commissioners of the revenue for Sussex county cannot now do—that is, "levy taxes upon property for years that are passed in which such property escaped," or assess such property for taxation when no levy has been made.

We find no error in the decree of the Circuit Court of Sussex county of date of January 30, 1919, and that decree is affirmed.

*Affirmed.*

ON PETITION FOR REHEARING.

In this case the plaintiff in error, the county of Sussex, has filed a petition to rehear in which it is suggested that in reaching its conclusions announced in the opinion in this case, the court overlooked, or disregarded the statute of 1916 (Laws 1916, c. 491) relating to omitted taxes, levies, etc. This statute is not mentioned *eo nomine* in the opinion, but it was neither overlooked nor disregarded.

[14] Under familiar law, a commissioner cannot lay a levy of any sort. His duties are to make the assessments consequent upon a properly ordered levy, whether the levy

was made by the General Assembly, the board of supervisors of a county, or the council of a city. This principle is recognized by the petition when it says: "County and district levies are fixed and ordered by the board of supervisors, in obedience to legislative enactments. No tax, State or local, for current or antecedent years can be assessed, or levied, without legislative authority."

[15] So much of the act as is relied upon by the petition to rehear is as follows:

"Sec. 508. Omitted taxes, levies, etc., how assessed.—If the commissioner of the revenue, examiner of records, or other assessing officer, commission or board designated by law to assess persons, property (real, personal and mixed), taxes, levies, *et cetera,* ascertain that any person or any real or personal property, or income, or salary, or license tax has not been assessed for taxation for any year by this State, county, district, city or town, or that the same has been assessed at less than the law required, for any year, or that the taxes, levies, *et cetera,* thereon, for any cause, have not been realized, it shall be the duty of the commissioner of the revenue, examiner of records, or other assessing officer, to list the same, and assess persons, property (real, personal and mixed), and levies at the rate prescribed for that year, adding thereto interest at the rate of six per centum per annum.

"Provided however—

"(1) That all assessments of intangible personal property, money and incomes for State taxes prior to the year nineteen hundred and three shall be conclusively presumed to be full, true and correct.

"(2) No municipal, county or district tax shall be levied or collected on any assessment of intangible personal property, money or incomes for taxes alleged to have been omitted from the assessments for the years prior to nineteen hundred and twelve."

The heading of the section is, "Omitted taxes, levies, etc., how assessed." The act relates to assessing officers only, and is intended to increase their powers of assessment, so as to include antecedent years. Plainly, however, this statute does not confer upon the boards of supervisors the power to make levies for the years that have passed. This power might be afforded by the General Assembly, but it should be clearly given, not derived by doubtful implication.

[16] The petition to rehear insists that this statute does afford to the supervisors the power to make a *nunc pro tunc* levy, as will appear from the following citations from the petition:

"We respectfully submit that section 508, as amended by the act of March 22, 1916 (Acts 1916, p. 826), both authorizes and requires a levy, if necessary, to enforce payment of omitted county and district levies for antecedent years back to and including the years 1912. * * *"

"That it also authorizes the board (i. e., the board of supervisors) to make a further levy for those years (1912, 1913, 1914) if a further levy were necessary. * * *"

"That the body of the act (Acts 1916) without reference to the second clause of the proviso authorizes such acts by the board of supervisors as may be necessary to give effect to the obvious purpose of the statute."

We did not and do not find anything in the statute to justify these contentions. It is true that the word "levies" is used at several places in the body of the act, but it is in relation to and in connection with the powers and duties of assessing officers. These words so used, and used somewhat loosely and inaccurately, are not sufficient to support the construction that the General Assembly intended thereby to empower the boards of supervisors—the legislative bodies of the counties—to impose taxes upon property that had not been included in the levies of antecedent years.

Hence, whatever may have been the intent of the orders of the board of Sussex county, of date December 20, 1917, and January 7, 1918, they are not "new orders laying levies upon bank stock for the years 1912-13-14."

[17]    Petitioner seeks to find supoprt for his contention, *supra,* in proviso No. 2 of the act. The language used in this proviso is singularly inapt, if it was intended by such language to give the power to order a levy to any official, or tribunal.   It is true that the word "levy" is used, but it plainly refers not to the legislative act of imposing a tax, but to the act of an officer collecting the tax tickets that are issued pursuant to an assessment.   An officer holding such tickets levies same upon the property of delinquent taxpayers.   The language of the proviso is, that "No municipal, county, or district tax shall be levied or collected on any assessment of intangible personal property," etc., "for taxes alleged to have been omitted from the assessments prior to 1912."   Taxes are not "levied on assessments;" assessments are consequent upon levies, using the word "levies" to refer to the legislative act of imposing a tax.   Obviously, this proviso means that if intangible personal property, alleged to have been omitted from the assessments for the years prior to the year 1912, is assessed, and tax tickets are made out pursuant to such assessments, such tickets shall not be levied and collected.

[18]    The power of commisioners of the revenue to assess for omitted taxes in antecedent years is conceded in the opinion, in this case, but it was not considered that the act of 1916 empowered these officials to assess property not charged with a tax by some proper tribunal; and it is not now so considered.

[19] Petitioner to rehear renews its original contention that the word "may" in section 1040-a of the Code of 1904, is mandatory, and should be read "must."   For the purpose

of this case, this contention was conceded in the opinion, but the mere mandate of the Constitution that taxes shall be laid on certain property by the General Assembly, or a board of supervisors, does not by itself impose the tax, though failure to do so may be a breach of duty by the officials charged therewith. Some positive action to that end must be taken by the legislative body, in this instance the board of supervisors. Hence, we entered upon the enquiry whether as a matter of fact bank stock was locally taxed for the years in question. The court concluded, for reasons given in the opinion, and which need not now be repeated, that this stock was not taxed for county purposes during these years. Hence, in our view of the statute of 1916, this stock could not be either taxed or assessed thereafter by the local officials of Sussex county under authority either of that or any other act.

The questions raised by the petition to rehear have been given careful consideration, but the conclusions heretofore reached in this case are believed to be sound, and to rest on reason and authority.

The petition is denied.

*Rehearing denied.*